SCHMIDT BROS. CONSTRUCTION COMPANY, Appellant, v. RAYMOND YOUNG MEN'S CHRISTIAN ASSOCIATION, Appellee.

CONTRACTS: Rescission and Abandonment—Grounds—Default of
1   Both Parties—Mechanics' Liens. One who is in default in the performance of a contract may not rescind, even though the other party is also in default. So held under a building contract, where the contractor was seeking to rescind, but was in default in the completion of the building at the time agreed, and the owner was likewise in default in making payments as provided by the contract.

CONTRACTS: Rescission and Abandonment—Abandonment of
2   Building Contract—Right of Owner. An unjustifiable abandonment of a building contract arms the owner, nothing appearing in the contract to the contrary, with right to complete the building and charge the reasonable cost and expense thereof to the defaulting contractor. Evidence reviewed, and held that the expenditures in completing an abandoned building were reasonable.

*Appeal from Floyd District Court.*—J. J. CLARK, Judge.

TUESDAY, JUNE 26, 1917.

REHEARING DENIED MONDAY, SEPTEMBER 24, 1917.

SUIT in equity to foreclose a mechanics' lien. The facts are fully stated in the opinion.—*Affirmed.*

*Alden, Latham & Young* and *J. C. Campbell,* for appellant.

*Blythe, Markley, Rule & Smith; Ellis & Ellis; Sager, Sweet & Sager; Eggert & Lockwood;* and *Frank Lingenfelder,* for appellee.

STEVENS, J.—On April 18, 1910, Schmidt Bros. Construction Company, of Chicago, appellant herein, entered into a written contract with the Raymond Young Men's Christian Association, of Charles City, Iowa, to furnish all the necessary material and labor, and construct for it a Y. M. C. A. building in said city. The contract provided that the building should be constructed according to the plans, drawings and specifications of an architect, and that the material used should be as specified. The contract further provided that the building should be completed on or before November 1st following, and that the association would be allowed as liquidated damages the sum of $15 per day for each and every day required for the construction of the building after November 1, 1910, and that the association would allow the contractor a like sum per day for each and every day that the building should be completed and accepted prior to November 1, 1910, in addition to the price stipulated in the contract. The consideration to be paid the contractor was $56,474, same to be paid upon certificates of the superintendent as nearly as possible on the 8th day of each month as the work progressed, monthly payments not to exceed 85 per cent of all material wrought into the building, plus not to exceed $2,000 in value of the accepted material on the ground, the remainder on satisfactory completion and acceptance of the entire work after the expiration of 30 days.

The contractor began work about April 18th, and continued until May 31st, when work was suspended until the

early part of July, when it was resumed and continued until November 19th. Upon the latter date, the contractor abandoned his contract, and the building was subsequently completed by the association at its own expense. Payments were made from time to time by the association up to about the first of November, when, according to the estimate of the superintendent, there was due the contractor $12,019.85. The last payment made was on November 12th, and was in the sum of $6,019.85.

Appellant assigns as its reason for quitting work the first time certain disagreements between its representatives and appellee's superintendent and some of its officers regarding written orders for extras, and the refusal of appellee to submit to the decision of the architect a dispute regarding certain material used and on the ground for use in the building; for its final abandonment of the contract, nonpayment by appellee of a past-due monthly installment, and the refusal of appellee to pay a large sum demanded in payment of alleged extras, and to make future settlements upon estimates made by the architect or by appellant. The amount claimed by appellant at this time as due it for extras was $5,130.81. Appellee conceded $1,410.50 of this amount.

Appellant also claimed to have expended and paid for material wrought into the building or on the ground, about $16,500; for labor, $16,082; miscellaneous expense, $1,815; and that it was obligated to subcontractors for about $12,000, making the aggregate paid out and for which it was liable, $46,397; admitted the payment by appellee of $22,009.15, and claimed a balance due of $24,387.85. Appellee claims to have completed the building according to the plans and specifications, at an expense of $23,561.22, and to have suffered damages amounting to $2,925. Appellant offered testimony tending to show that the building could have been completed for approximately $16,000.

The court found that appellant was entitled to recover the contract price, plus $1,410.50 allowed as extras, or a total of $57,884.50, against which it charged $22,009.15, the amount admitted to have been paid appellant, damages in the sum of $2,925, the cost of completing the building, $23,561.22, and rendered judgment for the balance, $9,389.13, in favor of appellant as principal, adding thereto $1,583.63 as interest, or a total of $10,972.76. The court further found that there was due several subcontractors, who had intervened, in the aggregate, $12,551.17, together with costs amounting to $71.80, and entered judgment against appellant in their favor for the amount due each respectively, and provided that the same be paid from the said judgment. The court further established a lien on the building for the amount found due and owed to appellant.

I. As above stated, appellant finally
1. CONTRACTS: re- quit work on the building and abandoned its
scission and
abandonment: contract about November 19, 1910, and,
grounds: de-
fault of both while negotiations were carried on between
parties: me-
chanics' liens. the representatives of the respective parties
relative thereto, it never resumed work on the building, and in July, 1911, appellee took charge of and completed the same at its own expense. After the completion of the building by appellee, the construction company brought a suit in the district court of Floyd County, claiming the sum of $24,595 as the balance due it, and praying foreclosure of a mechanics' lien. It was alleged in plaintiff's petition that it had sought to perform its contract according to the terms thereof, and that it was prevented, by reason of the failure and refusal of appellee to make payments under the contract as the same became due, from completing same; that, notwithstanding it caused notice to be served upon appellee prior to November 19th, advising appellee's officers that it would quit unless full payment was made, appellee neither paid nor tendered payment of the amount claimed to be due;

and that, on account thereof, it was justified in abandoning said contract. The petition further alleges that appellant was entitled to $5,130.81 as compensation for extra material and labor; that it had received payment in the sum of $22,009.15; and that the above balance was due and unpaid.

The contract between the parties provided that payments should be made as nearly as possible on the 8th of each month as the work progressed, in an amount equal to 85 per cent of all material wrought into the building, and material accepted and on the building site, not exceeding $2,000 in value, and the balance 30 days after the expiration of the date on which the building was completed. Estimates were made by Mr. Emmett, superintendent, in accordance with the provisions of the contract, for August, September, October and November. Estimates were also made by the representatives of appellant. Payments were made on the contract as follows: August 12th, $4,720.47; September 13th, $2,127.98; October 8th, $3,640; October 15th, $2,500; October 15th, to subcontractor, $2,600; October 15th, to subcontractor, $400; November 12th, $6,019.85. According to estimate of appellee's superintendent, it owed appellant, on November 8th, $12,019.85, and, according to appellant's estimate, the amount due on said date was $16,195.68. But, as above stated, appellee paid $6,019.85, leaving a balance due on November 19th of $6,000.

The contract provided for the settlement of disputes respecting the value of any work added or omitted by the contractor, and such matters as might arise in relation to the contract, the work to be or that had been done or performed under it, or in relation to the plans, drawings and specifications. Disputes as to the work added or omitted were to be submitted to Charles Snyder, and, as to the other matters, referred to Shattuck & Hussey, architects, the decisions of each of said arbiters to be final and binding

upon the respective parties; but no provision was made in the contract for settling or adjusting disputes arising out of other matters than those above stated. Appellant was required to complete the building November 1st, unless the time was extended on account of a general strike, alterations, fire or other action of the elements.

It is argued on behalf of appellee that appellant was in default November 1st, not having completed the building at that time as required by the contract, and that the demands made upon it, as a condition precedent to resumption of the work and the completion of the building, were not in accordance with the terms of the contract, but contrary thereto and to the facts.

On November 14, 1910, a firm of attorneys representing appellant wrote the officers of appellee a letter, stating that work would cease on November 16th unless appellee complied with the following demands: .(a) That appellee adjust certain sums, due as extras for excavating, demurrage, delays, extra concrete and rubble, change of sewer and other matters, exceeding in value $3,000; (b) that, in the future, monthly estimates of the work be made by the architects, or the estimates of appellant accepted by the officers of appellee. As appellee did not comply with the demands made by appellant's attorneys, on the 19th of November appellant ceased work and abandoned the contract, but retained the keys and continued in possession of the building until forcibly removed, the fore part of July, 1911.

Many authorities are cited by counsel for appellant to the effect that the failure of the owner to make payments according to his contract is such a default in the performance of its terms as to justify the contractor in rescinding the contract and bringing suit for the value of the materials furnished and work and labor performed upon the structure. Conceding this to be the law, is it applicable to or controlling in this case? There is another rule appli-

cable to the rescission of contracts, which has been well stated by the Supreme Court of California as follows:

"The rule is general that the right to rescind a contract rests only with the party who is without default. One party cannot * * * violate the contract himself, and then seek a rescission on the ground that the other party has followed his example." *State v. McCauley*, 15 Cal. 429, 458.

See also *Fairchild-Gilmore-Wilton Co. v. Southern Refining Co.*, (Cal.) 110 Pac. 951; *American-Hawaiian Eng. & Const. Co. v. Butler*, (Cal.) 133 Pac. 280, and cases cited.

The building in question was to be completed by November 1st, and, as above stated, appellant abandoned work November 19th, without having completed the same; so that, unless time was extended by the owner, or it was excused on some other ground, then appellant was in default, and the rule last stated is to be applied. Counsel for appellant seek to excuse its failure to complete the building within the time specified, upon the ground that delays resulted because of controversies between the representatives of appellant and superintendent of appellee, consuming at least six weeks of the time, and that other delays resulted from different causes for which appellant was not to blame. Appellant quit work upon the building the 31st of May, and did not resume work until the fore part of July. The reasons assigned for quitting work at this time are that a controversy arose with reference to extra work; that appellee's superintendent refused to give written orders for extras as provided by the contract; that brick shipped had not been approved by the architect; that some crushed stone taken on the ground by appellant had been rejected by appellee's superintendent; that its officers refused to submit matters for decision to the architect, but insisted that its superintendent was competent to pass upon the matter. The superintendent testified that nothing was said to him by the representatives of appellant about quitting work, and the

officers of appellee were not previously advised of appellant's intention, or the purpose for which it ceased work at this time.

It appears from the evidence that there was a controversy with reference to a carload of crushed rock, and also some brick; that some inferior material had been wrought into the building. The matters in dispute were finally submitted to the architect, who decided that appellee's superintendent was right as to the crushed rock, and that appellant was seeking to use inferior brick in the structure; and required appellant to remove clay from the crushed rock, and condemned some of the brick that it was seeking to build into the structure. There was also some controversy from time to time in regard to certain materials furnished and labor performed by appellant, for which it claimed pay as extras. The evidence shows that the members of appellant construction company were experienced contractors and builders, necessarily thoroughly familiar with the plans and specifications of the architect, knew and understood the kind and character of the material required for the structure in question, and could not have been ignorant of the fact that the crushed rock and some of the brick used prior thereto and on the ground May 31st for use were not such as were required by the specifications.

It is doubtful whether the controversy over the matters above referred to required appellee, under the contract, to submit same to the architect for decision. In any event, in so far as the same related to the brick and crushed rock, it was quite clear that the decision of the architect was not necessary. The contract provided that Mr. Emmett should act as superintendent of the work on the building, for appellee, and he had the right to forbid the use of material in the building which, it was patent, was not as specified by the architect. So far as the controversy related to pay for certain extras, the work was not far advanced upon

the building, and there was no apparent reason why the same should be suspended or abandoned on account thereof. This was a matter that could well have been settled at any time in the future. The record fails to disclose facts which justified. appellant in suspending work at the time in question, so that, unless the time for completing the building was extended by agreement, appellant was in default by failing to complete the building on or before November 1st. We cannot find, under the evidence, that the officers of appellee agreed to extend the time for the completion of the building. On the contrary, it appears from the evidence that the representatives of appellee declined to enter into an agreement to extend the time, giving as one reason that such extension would avoid the bond given by the contractor to secure the faithful performance of the terms of the contract.. Being in default, appellant was not in a position on November 19th to rescind the contract on account of the failure of appellee to make strict payments in accordance with the terms of its contract. Furthermore, appellant had no right, under its contract, to demand that monthly estimates as to the work and labor performed and materials furnished be made by the architects, or that its estimates be accepted, for the reason that the contract provided that the estimates were to be made by Mr. Emmett, superintendent; nor had it a right to demand payment for extras to which it was not entitled, as a condition precedent to its continuing the work after it should have been completed.

Mr. M. W. Ellis, called as a witness on behalf of appellee, testified that he was present at a meeting of the officers of appellee, after work was suspended the first time, at which several representatives of appellant were present, and that Mr. Young, as spokesman, stated that appellant would proceed with the building if appellee would allow the payment claimed as extras for excavating, approve the

building as far as completed, discharge Mr. Emmett as superintendent, pay it for work done up to that time, waive the provision of the contract for $15 per day liquidated damages for each day after November 1st that the building remained uncompleted, and permit the architect to pass upon all questions, instead of the superintendent; so that, apparently, the demands and conduct of appellant, commencing shortly after work began, were not calculated to inspire confidence on the part of the officers of appellee, but rather indicated a disposition to avoid carrying out strictly the terms of its contract. However, it is claimed by appellant that, at or about the time it resumed work in July, a tacit agreement was made with the officers of appellee that the time would be extended for six weeks. This is specifically denied by all of the officers named.

It is not contended that appellant did not have a right, under its contract and upon complying therewith, to demand payment of the monthly installments in strict accordance with its provisions; but, at the time it quit work, according to reasons assigned therefor by its attorney, it was not alone because of the failure to pay the installments that it abandoned the work, but because it apparently desired to coerce appellee to pay it a sum of money not due, and obtain terms more beneficial than those expressed in its contract. It had agreed to carry out the contract according to its true spirit, meaning and intent, and to do the work to the full and complete satisfaction of appellee's superintendent. This it did not do. No evidence was offered to show that appellee's superintendent was unfair or unreasonable in what he did to have the building constructed out of the material specified and according to the plans of the architect.

It is our conclusion that the lower court was right in its holding that appellant did not excuse its failure to complete the building by the time specified in its contract.

2. CONTRACTS:
rescission and
abandonment:
abandonment
of building
contract:
right of
owner.

II. Evidence was offered on the part of appellant, for the purpose of showing that the building should have been completed at a much less cost than was expended by appellee in completing same. W. J. Zitterall, who had had 22 years' experience as a general contractor, testified that he made an estimate of the cost of completing the building, and found that it could be completed for $16,631. Adolph Proskauer, architect and civil engineer, with 14 years' experience, testified that, according to his estimate, it could have been completed for $13,938.26; while W. L. Maxson, another experienced contractor, offered, it is claimed, to furnish all labor and materials necessary to complete the building for the sum of $16,500. On behalf of appellee, it is claimed that the latter declined to enter into a contract guaranteeing to complete the building for the estimated amount. The testimony offered on behalf of appellee · fixed the cost of completing the building at $23,561.22. Appellant contends that this amount is grossly excessive, and includes certain specific items not properly allowable as expense against it.

The court allowed appellant the full amount of the contract price, plus $1,410.50 allowed as extras, or a total of $57,884.50, charging against this sum the amount paid, $22,009.15, damages amounting to $2,925, cost of completing building, $23,561.22, and rendering judgment for the balance due plaintiff, $9,389.13, with interest thereon at 6 per cent from July 20, 1911, to the date possession of the building was surrendered to, and received by, the owner, amounting to $1,583.63, making the total amount due, for which judgment was entered, $10,972.76. Several subcontractors filed liens and intervened in this suit. The court found the aggregate of their claims, with costs taxed, to be $12,622.97, and entered judgment upon each respective claim for the amount due, and decreed that the amount

found due appellant be first applied to the payment of the claims of the intervening subcontractors. The contract contained no provision respecting the completion of the building in case of the failure of the contractor to complete the same. Under these circumstances, appellee had the right to complete the building and charge the reasonable cost and expense thereof to appellant. That this is the true rule seems to be conceded, but see *Page & Son v. Grant,* 127 Iowa 249; *Ludowici Caladon Co. v. Independent School District,* 169 Iowa 669.

Appellant undertook to show that, before its abandonment of the contract, it had paid out for labor on the building, $16,082, for material, $16,500, miscellaneous expense, $1,815; that it still owed subcontractors about $12,000, and was entitled to be paid for extras in the sum of $5,130.81. Appellee submitted a full and complete itemized statement of all labor and material going to make up the amount claimed to have been expended by it in completing the building. Appellant has failed to point out that any material was used or charged that was not necessary to complete the building according to the plans and specifications, but it is claimed that an unreasonable time was occupied in doing the work, and that labor was employed by the day instead of by contract; that it could have been done cheaper by contract, and should have been done for less money.

Appellant having abandoned the contract, appellee was not required to submit the cost of completing the structure to competitive bidders, nor to complete the same at the lowest possible cost, but had the right to expend such sum for labor and material as was fairly and reasonably necessary to complete the structure in accordance with the contract and the plans and specifications of the architect. It is not shown that appellee did not expend upon the building the amount claimed. Counsel for appellant, though several

times requested to do so, failed to produce or offer in evidence all vouchers which it claimed to possess, showing expenses incurred for labor and other items. However, the amount claimed to have been expended, added· to the expense incurred by appellee in completing the building, greatly exceeded the contract price. This, however, may tend as well to show that appellant engaged to erect the building for an inadequate price—that it was mistaken as to the amount actually expended by it—as that the cost to appellee of completing the building was excessive.

Specific items allowed by the trial court to which our attention is called by appellant are: $207.65, expense of janitor; $150 per month allowed the secretary of defendant during the time the building was being completed; and $6 per day paid Emmett as superintendent. The testimony is that the janitor was kept busy at odd jobs by the superintendent; that defendant's secretary kept the books of account showing all expenditures made by appellee in completing the building, the time of the workmen, and the rate allowed per hour for each. He also kept an account of money received from the sale of certain material that was on the premises when appellee took possession, and that was afterward sold by it, for which appellant was given credit. Originally, appellee's superintendent was paid by it; but, after the abandonment of the work by appellant, he took charge of the work of completing the building. That it was necessary to have a superintendent for this purpose will not be denied. It does not .appear that the amount paid the parties named was unreasonable, and, therefore, it was properly charged against appellant by the court.

III. Appellant also complains of the allowance made by the court as damages. The allowance was in accordance with the provisions of the contract. It seems to be con-

ceded that the case is one in which the measure of damages provided by the contract should be applied. In view of what has been said above, the conclusion follows that the amount allowed by the court is fully justified by the evidence and should stand.

IV.    The only remaining question relates to the matter of extras.   This question involves a technical construction and interpretation of the plans and specifications of the architect.   We have gone over the evidence regarding each of the several items and checked the same with the finding of the trial court in detail.   Some eighteen days were occupied in the trial of this case.   The court saw the witnesses and heard the testimony, held the matter under advisement for several months, and we are not disposed to interfere with its finding.   Much careful and patient consideration was evidently given the facts by the court, and the conclusion reached is fully justified by the evidence.   Upon an examination of the whole record, we reach the same conclusion.

For the reasons pointed out, the judgment of the lower court is—*Affirmed.*

GAYNOR, C. J., WEAVER and PRESTON, JJ., concur.