DAVID A. OREBAUGH *vs.* RICHARD G. BADGER & another.

Suffolk.    November 13, 1931. — April 1, 1932.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Contract,* Rescission, Performance and breach. *Equity Jurisdiction,* Rescission.

An author made an agreement in writing with a publisher under the terms of which he paid the publisher $975 and granted and assigned to him his rights and copyrights in a certain literary work and the publisher agreed to publish the work by printing one thousand copies and by employing diligently all the usual and legitimate methods of advertising said work to the book trade, including the diligent distribution by mail and otherwise of special circulars and advertising matter in the usual and recognized channels of trade and to lists of names and addresses furnished by the author; and to pay a certain royalty to the author. There was no express provision dealing with the time within which the defendant was obliged to perform. The author, after complete performance on his part, brought a suit in equity against the publisher over a year and two months after he had delivered his manuscript to the defendant, averring failure to perform by the defendant and refusal by him further to perform and seeking rescission of the contract, repayment of the $975 and reassignment of the rights and copyright in the literary work. From findings by a master, it appeared that it was more than seven and one half months after the defendant received the manuscript from the plaintiff before he produced any completed book and that then he produced only two hundred fifty copies; that he did not circularize as he had agreed to; that only thirty copies had been sold by him; and that the defendant had told the plaintiff's representative in substance that he was sick of the whole transaction and would do nothing further to promote sales; and that, if the defendant had used

reasonable diligence, the book would have been printed, bound and jacketed and the issuance of the circulars would have been completed within five months after delivery of the manuscript to the publisher. A final decree was entered rescinding the contract and ordering the payment to the plaintiff of $915 and interest, and a reassignment of the copyright to the plaintiff. The defendant appealed. *Held,* that

(1) In the circumstances disclosed in the report, it was the duty of the defendant to complete the work within such time subsequent to the date when the manuscript was delivered to the defendant as might be reasonable;

(2) The defendant, as a matter of law, took an unreasonable time to complete the work;

(3) There was a clear repudiation by the defendant of his obligation;

(4) Such repudiation, taken in connection with the full performance by the plaintiff, gave the plaintiff a right in equity to a return of his manuscript, a reassignment of his copyright, and, it appearing that the breaches of the contract were material, to a recovery of the money he had paid in advance.

(5) The decree was affirmed.

BILL IN EQUITY, filed in the Superior Court on February 24, 1930, and described in the opinion.

The suit was referred to a master. Material facts found by the master are stated in the opinion. An interlocutory decree confirming the master's report and the final decree described in the opinion were entered by order of *Bishop,* J. The defendants appealed.

*B. L. Hill,* for the defendants.

*J. T. Noonan,* for the plaintiff.

PIERCE, J. This is a bill in equity alleging, in substance, that on December 10, 1928, the plaintiff and the defendants entered into a written contract, a copy of which is annexed to the bill of complaint and marked "A," whereby the plaintiff granted and assigned to the defendants his literary rights and copyrights in and to a certain literary work written by him entitled "Crime, Degeneracy and Immigration," and agreed to pay the defendants $975 in instalments, and at times specified in said contract. It is further alleged that the defendants, in said contract, agreed to publish said entitled literary work by printing one thousand copies thereof and by employing diligently all usual and legitimate methods of advertising said work to the book trade, including the

diligent distribution by mail and otherwise of special circulars and advertising matter in the usual and recognized channels of trade and to lists of names and addresses furnished by the author; that the defendants further agreed to pay "the plaintiff a royalty of twenty . . . per cent of the gross proceeds received from the sale of said published work; to render to the plaintiff semiannual statements of account, in the months of February and August of each year and to make settlements in cash immediately upon the approval of said statements of account by the plaintiff." The bill of complaint alleges performance by the plaintiff, unreasonable delay in performance by the defendants, failure of the defendants to advertise the book as fully and adequately as was required by the contract; that they refused to do any further act or acts to promote the sales of the plaintiff's said work; that the defendant Badger had stated he would make no additional effort to sell said work; that they did not intend fully to perform the contract at the time it was executed, but intended merely to print the said work and to do no acts to promote its sale. Failure of consideration and failure of the defendants to perform, and that the plaintiff has no adequate legal remedy are also alleged. The prayers of the bill are for rescission, and that the defendants be ordered to repay to the plaintiff the sum of $975 and to reassign to the plaintiff the literary rights and copyright in a literary work entitled "Crime, Degeneracy and Immigration."

Among other facts the defendants admit that the plaintiff has performed his part of the contract, but contend that "Even if a case is otherwise made out for rescission, the contract in this case cannot properly be rescinded, because all parties cannot be placed *in statu quo.*"

Upon the completion of the pleadings the case was referred to a master who duly filed a report. No objections to the report were filed by the defendants. A single objection filed by the plaintiff was later waived. The report was confirmed and a final decree was entered rescinding the contract, ordering the payment of $915 and interest, and a reassignment of the copyright, to the plaintiff. The appeal from the final

decree presents the question whether upon the facts found by the master or admitted by the defendants the decree is justified. *French* v. *Peters*, 177 Mass. 568. *Casto* v. *Wrenn*, 255 Mass. 72.

The facts found by the master which the plaintiff contends support the final decree are as follows: The defendant Badger is engaged in the business of publishing books in Boston, and has been so engaged for thirty-three years. His place of business is at number 100 Charles Street. The defendant The Gorham Press is a Massachusetts corporation with a place of business at number 100 Charles Street. "This corporation is little more than a name under which the defendant Badger does business. It has no printing press or book binding facilities." On October 18, 1928, the defendant Badger solicited from the plaintiff the opportunity of considering, with a view to publication in book form, any manuscript the plaintiff might have. On November 19, 1928, the defendant received from the plaintiff a manuscript of a book written by the plaintiff entitled "Crime, Degeneracy and Immigration — Their Interrelations and Interreactions." After an exchange of several letters the parties, under date of December 10, 1928, executed a written contract under seal. It was signed by the plaintiff and by both defendants. The defendants admitted that a correct copy thereof was annexed to the bill of complaint, and it is a part of the record before this court. The plaintiff charged in his bill of complaint that the defendants had a fraudulent intent merely to print the book for the plaintiff and to do no acts to promote its sale, and that the defendants further intended, from the beginning, not to perform their contract with respect to the diligent advertising and promoting of the work and putting it before the public. Respecting this charge the master found "that these allegations are not sustained . . . that there was lack of diligence on the part of the defendants . . . but . . . that it was [not] part and parcel of a scheme to defraud the plaintiff of $975."

Among other things the contract provided that the defendants will publish one thousand copies of the plaintiff's

work on first printing in such style as they deem best suited to its sale, including a paper jacket on which will be printed an appropriate summary or description of the contents, and will pay to said author, his representatives or assigns, a royalty of twenty per cent of the gross proceeds received from the sale of said published work. The defendants, called "Publishers" in the contract, further agreed "that they will diligently employ all usual and legitimate methods of advertising said work to the book trade, and will diligently distribute by mail and otherwise special circulars and advertising matter in the usual and recognized channels of trade and to lists of names and addresses which may be furnished by the Author . . . ." The master found inexcusable delay on the part of the defendants in printing and advertising the work; that they published only two hundred fifty copies of the one thousand copies which they agreed to publish; and that the defendants' failure "to 'diligently employ all usual and legitimate methods of advertising said work to the book trade' and to 'diligently distribute by mail or otherwise special circulars and advertising matter in the usual and recognized channels of trade and to lists of names and addresses which may be furnished by the Author' constituted a material breach" of the contract. More specifically, the master found that the manuscript was in the defendants' hands on December 10, 1928, and they did not produce a finished book until July 27, 1929; that no jackets were ready for the bound book until September 4, 1929; that no step was effectively taken by the defendants toward having circulars printed until sometime in September and none was printed until October, 1929. In this connection, the master finds that "There was no reason why a circular could not have been prepared by the defendants, and have been printed and ready for distribution at the time the bound volumes came from the binder" on July 27, 1929. Respecting the actual handling of the work of getting out the plaintiff's book, the master finds that the defendants had no printing press of their own; that they sent the manuscript to a printer, the bulk of whose business was printing catalogues for various people;

that the defendants in addition to having no printing press had no bindery; that printed copies of the book late in June or early in July were sent to the binders, with instructions from Badger to bind only two hundred fifty copies and that the binders now have on hand in their bindery between seven hundred fifty and eight hundred fifty unbound copies of it; that the binders sent these two hundred fifty copies to the defendants in about ten days or two weeks after they received the printed sheets from the printer, and they were received by Badger on July 27, 1929.

It would seem to be unnecessary to describe further in detail many other acts and omissions of the defendants which the plaintiff contends are material breaches going to the essence of the contract. The contract contains no provision dealing with the time within which the defendants were obliged to perform their part of the contract. We agree with the assumption of the master and with the contention of the plaintiff that, in the circumstances disclosed in the report, it was the duty of the defendants to complete this work within such time subsequent to December 10, 1928, as might be reasonable; and accepting the finding of the master that if the defendants had used reasonable diligence the book would have been printed, bound and jacketed and the issuance of the circulars would have been completed by April 30, 1929, we are of opinion that the defendants, as matter of law, took an unreasonable time to complete the work.

It appeared at the hearing before the master, and was not disputed by the defendants, that "Badger was acting both for himself and for the defendant The Gorham Press." The bill of complaint charged in paragraph 7 "That the defendants have refused to do any further act or acts to advance and promote the sales of the plaintiff's said work. That the defendant, Richard G. Badger, has stated that he would make no additional effort to sell said work, although, upon information and belief, only thirty copies thereof have been sold." In their answer the defendants "admit that they were unable to further promote the sale of the plaintiff's work and admit the allegation that the

defendant Richard G. Badger would make no additional effort to sell said work . . . ." Respecting this charge and answer the master found that on November 6, 1929, Badger, acting for himself and the defendant The Gorham Press, and again on January 27, 1930, told the plaintiff's representative in substance that he was sick of the whole transaction and would do nothing further to promote sales.

The plaintiff contends that "the defendants were guilty of substantial and material breaches of their contract with the plaintiff, breaches going to the root thereof," which he summarizes as follows: "(1) They were guilty of a substantial, unreasonable, unexplained, and inexcusable delay, amounting to over five months, in printing the book, binding it, preparing jackets for it, and beginning its advertising. (2) They have at no time completed the publication of the one thousand jacketed copies called for by the contract, but have completed the publication of only two hundred fifty. (3) They were guilty of a substantial failure to use all usual and legitimate methods of advertising as required by the contract, in that they advertised in no newspapers, used no placards in book stores, and, finally, used no salesmen, the method of advertising found by the master most important of all. (4) The methods of advertising which the defendants did employ were not employed with diligence, as required by the contract, in that they sent only seven books to reviewers and only six sample copies to book stores; and the plaintiff was compelled to use his own representative, at his own expense, in Boston to have anything at all along this line accomplished. (5) The defendants utterly failed in the distribution of circulars, as required by the contract, in the usual and recognized channels of the trade and to lists of names and addresses supplied by the plaintiff, in that, among other things, they left uncircularized thirty-three thousand out of forty thousand names and addresses supplied by the plaintiff, and sent to no one at all one thousand circulars which, printed at the plaintiff's expense, the defendants had agreed to send to members of the Chicago Bar Association." We think this summarization is fully

warranted by the facts found and by the special findings of the master.

Respecting the admission of the defendants to paragraph 7 of the bill of complaint, and the specific finding of the master in relation thereto, the plaintiff, supported by the argument of the defendants, contends that on January 27, 1930, the contract was a valid and subsisting one, that it imposed a continuing obligation on the defendants which they had not discharged; that at that moment "such a list furnished by the plaintiff had been not more than one quarter circularized and stood uncircularized to the extent of thirty-three thousand." The statement of Badger speaking for himself and his codefendant, "that he was sick of it all and would do nothing further to promote sales," was, in itself, a clear repudiation by the defendants of their obligation. The facts found by the master warranted a ruling by the court· below that the several breaches indicated in the report were of so substantial and material a nature as would constitute a defence to an action had the plaintiff not fully performed, as he did, the obligation of making payments in advance of performance by the defendants. The repudiation of the obligation of the defendants on January 27, 1930, taken in connection with the full performance by the plaintiff, gave to the plaintiff in equity a right to a return of his manuscript and to a reassignment or surrender of the United States copyright. The breach of the contract being material in respect to the matter indicated in the report, it is plain the plaintiff was entitled to recover the money which he had paid in advance. *Martin* v. *James Cunningham, Son & Co.* 231 Mass. 280. See Williston, Contracts, § 1467.

*Decree affirmed with costs.*