THE MAYTAG COMPANY, appellee, v. GEORGE L. ALWARD, appellant, WILLIS STEINBERGER and JASPER COUNTY SAVINGS BANK, defendants-appellees.

No. 50442.

JANUARY 9, 1962.

Korf, Diehl, Swanson & Clayton, of Newton, for appellant, George L. Alward.

Campbell, Campbell & Caldwell, of Newton, for appellee The Maytag Company.

Cross, Hamill, Selby & Updegraff, of Newton, for appellee Jasper County Savings Bank.

Brierly, McCall & Girdner, of Newton, for appellee Willis Steinberger.

GARFIELD, C. J.—This is an action in equity brought by The Maytag Company against George L. Alward, a key employee at the time he resigned on April 1, 1960, to accept employment with The Brunswick-Balke-Collender Company in Muskegon,

Michigan. Plaintiff seeks to rescind option agreements under which defendant acquired 600 shares of its corporate stock and claims 400 additional shares which plaintiff refused to deliver. Restitution and cancellation of the stock are also asked. The action is based on the claim that when the options were exercised defendant did not intend to complete his agreed period of service with plaintiff, had accepted employment with the Brunswick company, defendant fraudulently concealed his intent, breached his contract and the consideration therefor failed.

Two stock-option agreements are involved. A later one, dated March 10, 1960, is merely incidental. They are identical except for dates and number of shares optioned. Pursuant to the first agreement, exhibit 5, dated August 27, 1957, defendant acquired 600 shares of Maytag stock. The option was exercised February 22, 1960. Pursuant to the second agreement, exhibit 6, dated December 18, 1958, 400 shares were issued to defendant but plaintiff withheld delivery of them when it learned defendant was leaving plaintiff's employ. This second option was exercised March 24, 1960. Exhibit 5 required defendant to remain in plaintiff's service until August 27, 1960, exhibit 6 until August 27, 1963. The agreements were signed by both plaintiff and defendant.

The trial court rescinded the option agreements and decreed cancellation of all 1000 shares upon repayment by plaintiff of the amounts defendant paid in exercising the options, less the amount of a dividend he received on the 600 shares before this action was commenced. The decree is based on a finding that defendant's voluntary quitting his employment constituted a material and irrevocable breach, going to the essence, of the stock sale contracts and causing a substantial failure of consideration as to each contract.

As to the 400 shares defendant claims under the second agreement, the court also found that at the time defendant exercised this option on March 24, 1960, he intended to leave plaintiff's employ, did not communicate such intent to a proper official of plaintiff and therefore was guilty of fraud. The court did not find fraud in acquisition of the 600 shares under the

first option because he found defendant did not then intend to leave plaintiff's employment.

Under each option agreement defendant had ten years from its date, subject to earlier termination as therein provided, to exercise it. Defendant borrowed all the money to exercise both options. The $7800 paid for the 600 shares was borrowed from Steinberger, also a Maytag employee, at 7 percent interest payable quarterly. This loan was secured by pledge of 400 of the 600 shares. To exercise the second option defendant borrowed $5000 from a bank in Newton, where plaintiff's main plants are located, and the rest of the $8650 from his mother and wife's family. The loan to the bank was secured by pledge of the remaining 200 shares acquired under the first option.

Steinberger and the bank, as pledgees of the 600 shares, are joined as defendants. However, for convenience we refer to Mr. Alward as the only defendant.

I. Defendant's main contentions upon this appeal are based upon what he says is the proper construction of the last sentence in paragraph 7 of each option agreement, exhibits 5 and 6. The paragraph first contains defendant's agreement to remain in plaintiff's service at least three years from the later of the date of the contract or the date to which he is otherwise obligated to remain and that he will, during such employment, devote his entire time, energy and skill to the service of plaintiff and promotion of its interests. Also that such employment shall be at the pleasure of plaintiff.

We quote the last two sentences of paragraph 7: "Any termination of the Employee's employment during such period that is either (i) for cause or (ii) voluntary on the part of the Employee * * * shall be deemed a violation by the Employee of such agreement. In the event of such violation, any option or options held by him under the Plan, *to the extent not theretofore exercised,* shall forthwith terminate." We italicize the words on which defendant particularly relies.

Defendant argues the plain meaning of the last quoted sentence is that in the event of "such violation" any option or options and the stock thereunder, to the extent theretofore exercised, do not terminate. In other words, that it is

agreed defendant may keep any stock acquired under an option exercised by him prior to a violation of the agreement. This is said to result from applying the rule expressio unius est exclusio alterius—the expression of one thing of a class implies the exclusion of others not expressed.

We have held the rule referred to applies in the construction of contracts as well as statutes. Beck & Sons v. Economy Coal Co., 149 Iowa 24, 30, 127 N.W. 1109; In re Trusteeship of Barnett, 217 Iowa 187, 190, 191, 251 N.W. 59; Carson v. Great Lakes Pipe Line Co., 238 Iowa 50, 55, 25 N.W.2d 855, 857. See also 17 C. J. S., Contracts, section 312; 12 Am. Jur., Contracts, section 239, page 769.

Defendant also contends the last sentence of paragraph 7 of the option contracts is a waiver by plaintiff of its right to damages and rescission for a violation of the contract and precludes any such relief by promissory estoppel.

We think defendant claims too much for the last sentence of paragraph 7. He construes it to mean not only that options not exercised prior to a violation of the agreement terminate upon such violation, but also that plaintiff is thereby deprived of any remedy otherwise available to it to obtain restitution of the stock issued prior to such violation. The sentence referred to certainly does not expressly deprive plaintiff of such remedy and we hold it does not do so impliedly.

The last sentence of paragraph 7 purports to apply only to any option or options which have not been exercised at the time the optionee is discharged for cause or voluntarily quits. It provides such an option may not thereafter be exercised. The sentence does not purport to apply to options which have been exercised prior to such a violation by the optionee of his agreement to serve. Indeed a so-called option which has been exercised is no longer an option. It ceases to exist as such. It then becomes a contract mutually binding upon the parties. Western Securities Co. v. Atlee, 168 Iowa 650, 661, 151 N.W. 56; 12 Am. Jur., Contracts, section 27, page 526; Id., section 37.

An option is a continuing offer which the offeror may not withdraw until the time fixed has expired because the offer is based on a consideration. Sargent & Co. v. Heggen, 195 Iowa

361, 364, 190 N.W. 506, and citation; 12 Am. Jur., Contracts, section 27; 17 C. J. S., Contracts, section 50a, page 397.

It is true these option agreements contain no provision as to the effect upon stock acquired when an option is exercised of a subsequent violation by the optionee of his agreement to serve his employer. Of course they might have done so. It was not necessary, however, for the agreements to specify the remedies available to plaintiff for such a violation. Nor does the failure to do so deprive plaintiff of any recognized equitable remedy.

 Even where a contract specifies a remedy which will lie for a breach thereof it is generally held that other legally recognized remedies are not thereby excluded. Westervelt v. Huiskamp, 101 Iowa 196, 201, 70 N.W. 125; Kettering v. Eastlack, 130 Iowa 498, 503, 107 N.W. 177, 8 Ann. Cas. 357; Heinz v. Roberts, 135 Iowa 748, 752, 753, 110 N.W. 1034; Satchell v. Alsop, 215 Iowa 161, 165, 166, 244 N.W. 838; Strauss v. Yeager, 48 Ind. App. 448, 93 N.E. 877, 882; McMillen v. Strange, 159 Wis. 271, 150 N.W. 434, 440. See also Hamlen v. Rednalloh Co., 291 Mass. 119, 197 N.E. 149, 152, 99 A. L. R. 1230, 1234.

17 C. J. S., Contracts, section 312, says of the expressio unius rule, "It has been held that the principle above stated does not apply to a case in which the contract expresses a specific remedy for its enforcement, and that in such case other remedies available under the law, independently of the contract, may be resorted to."

Strauss v. Yeager, supra, cited in support of what is just quoted, is persuasive authority for our conclusion. There a land sale contract provided for the right of specific performance or an action for damages in case of default. It was held this did not preclude the vendor's right of action for an installment of the price when due. This is from the opinion (page 459 of 48 Ind. App., page 882 of 93 N.E.): "Doubtless a contract could, by specific provisions, limit the remedies to be pursued in case of default; but that is not the question presented by the one before us. This is a question of implied exclusion. We have sought diligently for authority upon the application of the principle that 'the express mention of one person or thing is the exclusion of another,' to remedies named in a contract, and have

found none. The reason of the rule excluding things not mentioned fails when applied to a contract specifying remedies available under the law independent of the contract. * * * A contract that excludes some remedy given by law should be so definite and positive in its terms as to show the clear intention of the parties so to do."

Whitcomb v. Indianapolis Traction and Terminal Co., 64 Ind. App. 605, 611, 116 N.E. 444, 446, holds a remedy provided by a lease "did not deprive appellee [lessor] of any rights given by law, unless the terms thereof expressly restricted the parties to such specified remedy. * * * The lease in question contains no such restriction, and hence appellee was within its rights in pursuing its statutory remedy."

Dorris v. Center, 284 Ill. App. 344, 348, 1 N.E.2d 794, 795, states: "Where certain remedies are given to contracting parties by law, there has been a marked tendency to require a clear expression of an intent to forego such remedies before a party will be deprived of them."

We have pointed out that a statute will not be construed as taking away a common-law right of action existing at the date of its enactment unless that result is imperatively required. Harvey v. Prall, 250 Iowa 1111, 1121, 97 N.W.2d 306, 312. It would seem like reasoning should apply to a contention that a contract deprives a party thereto of a common-law remedy.

II. There is no merit to defendant's contention that the last sentence of paragraph 7 constitutes a waiver by plaintiff of its right to receive the consideration for the option agreements, performance of defendant's agreement to serve, and its rights in regard to rescission, cancellation of the stock and for fraud.

It is argued that what is said to be the plain meaning of the sentence referred to—that in the event defendant violates his agreement to serve he may keep stock theretofore issued—constituted such a waiver upon the execution of the agreements and they became effective "in the event of such violation." Our holding in Division I that the sentence does not have the effect defendant claims for it is a sufficient answer to this defense of waiver. Somewhat similar claims of waiver were rejected in Hamlen v. Rednalloh Co., supra, 291 Mass. 119, 197 N.E. 149,

152, 99 A. L. R. 1230, 1234, and Whitcomb v. Indianapolis Traction and Terminal Co., supra, 64 Ind. App. 605, 116 N.E. 444, 446.

The effect of defendant's argument on the question of waiver is that plaintiff and defendant entered into a contract under which the latter was obligated to remain in plaintiff's service at least three years but as part of the contract it relinquished its remedy for defendant's subsequent refusal to perform his obligation after exercising his option to purchase stock. Such a construction would render the contract of little value to plaintiff. Defendant, on the other hand, could virtually terminate plaintiff's rights under it merely by exercising his option and then violating his agreement to serve. It is quite unlikely the parties intended to enter into such an unreasonable contract. Such a construction of the agreement should rest on something more than implication.

III. We must also disagree with defendant's contention the last sentence of paragraph 7 of the option agreements furnishes the basis for a promissory estoppel against plaintiff. The contention proceeds from the premise that this sentence amounts to a plain promise by plaintiff that defendant could keep all stock acquired by him under the options prior to the termination of his employment. From this defendant argues he borrowed the money to exercise the options and accepted employment with Brunswick in reliance upon such alleged promise. There is testimony he so relied. He also admitted, however, he was aware of his agreement to serve plaintiff at least three years. There is also evidence defendant had been told by a Maytag official in charge of the option plan that if he exercised the option he would be expected to complete his agreed period of service.

Our disagreement with defendant's construction of the last sentence of paragraph 7 is fatal to the defense of promissory estoppel as well as to that of waiver. Nor are we persuaded plaintiff should be held to be estopped in order to avoid injustice. Further consideration of the doctrine of promissory estoppel is uncalled for. It is fully discussed in Miller v. Lawlor, 245 Iowa 1144, 1153, 66 N.W.2d 267, 273, 48 A. L. R.2d 1058.

■ IV. We think defendant's voluntary termination of his employment was such a repudiation and breach of the option contracts and amounted to such failure of consideration for the sales of stock as entitled plaintiff to restitution of the stock upon repayment of the purchase price. This is the relief the trial court granted.

When defendant resigned, five months remained of his agreed period of service under the first option agreement and his three-year period of service under the second option agreement had not been reached. In other words, defendant was obligated to serve plaintiff three years and five months after he voluntarily quit.

Consideraton for each of the option agreements was defendant's obligation to serve plaintiff for three years. Like agreements on the part of 40 other key employees to whom options were awarded constituted plaintiff's principal motive for adopting its option plan and granting options thereunder. The agreement to serve was also consideration for each of the stock sales upon defendant's exercise of the options. It is true defendant paid plaintiff the price at which the stock was optioned. But this was much less than the price for which plaintiff could have sold it on the market—both sales were at a sacrifice price.

■ Not every breach of a contract affords a ground for rescission. It will not be granted for a mere breach not so substantial as to defeat the object of the parties in making the contract. White v. Massee, 202 Iowa 1304, 1309, 211 N.W. 839, 66 A. L. R. 1434, 1438, and citations; Andrew. v. American Savings Bank & Trust Co., 219 Iowa 921, 935, 936, 258 N.W. 911; 12 Am. Jur., Contracts, section 440; 17 C. J. S., Contracts, section 422. Here, however, defendant's voluntary quitting his job was such a repudiation and breach of the contracts as to practically defeat their whole purpose and object. It went to the essence of the contracts. It is fair to conclude plaintiff would not have entered into the contracts in the absence of the agreement to serve. There is ample authority that such nonperformance, under the circumstances here, warrants the relief granted.

The remedy of rescission and restitution of property has most frequently been applied where property has been trans-

ferred in consideration of an agreement, which is later repudiated or breached, to support the grantor. We have awarded such relief in several cases of this kind. Kramer v. Mericle, 195 Iowa 404, 407, 408, 192 N.W. 257; Timberman v. Timberman, 229 Iowa 835, 841, 295 N.W. 158, 160; Snider v. Godfrey, 232 Iowa 1, 4 N.W.2d 380. See Caramini v. Tegulias, 121 Conn. 548, 186 A. 482, 112 A. L. R. 666, and annotation, 670, 677–679. However, similar relief has been granted in other cases of repudiation, breach or failure of consideration. 5 Corbin on Contracts, section 1120, page 533.

Such other precedents, which we think support the relief granted under the circumstances here, include Hansen v. Hall Mfg. Co., 196 Iowa 1, 5, 193 N.W. 568; Lees v. Akshun Mfg. Co., 7 Cir., Ill., 205 F.2d 577, 582; Therm-O-Proof Insulation Mfg. Co. v. Hoffman, 329 Ill. App. 645, 69 N.E.2d 725; Orebaugh v. Badger, 279 Mass. 54, 180 N.E. 529, 531; Hillside Cemetery Assn. v. Holmes, 97 Minn. 261, 105 N.W. 905, 906; Callanan v. Keeseville etc. R. Co. (Powers), 199 N. Y. 268, 92 N.E. 747, 752. The Therm-O-Proof, Hillside Cemetery and Callanan cases involve transfer of corporate stock. See also Restatement Contracts, section 354, and Comment 5; 12 Am. Jur., Contracts, sections 438, 440, 442; 17 C. J. S., Contracts, section 425.

This from Hansen v. Hall Mfg. Co., supra, is applicable here (page 5 of 196 Iowa): "If defendant proposes to repudiate its contract, it can do no less than to restore to plaintiff that which it has received from him in consideration of the agreement which it refuses to perform."

And from Kramer v. Mericle, supra, this may also be repeated (page 407 of 195 Iowa): "Equity will not permit a party to enjoy the fruits of a contract when he deliberately refuses or makes impossible of performance the obligations imposed therein [citation]."

■■ Callanan v. Keeseville etc. R. Co. (Powers), supra, contains this accurate general statement (page 284 of 199 N. Y., page 752 of 92 N.E.): "There is no hard and fast rule on the subject of rescission, for the right usually depends on the circumstances of the particular case. It is permitted for failure of consideration, fraud in making the contract, for inability to

perform it after it is made, for repudiation of the contract or an essential part thereof and for such a breach as substantially defeats its purpose. It is not permitted for a slight, casual or technical breach, but, as a general rule, only for such as are material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract. Failure to perform in every respect is not essential, but a failure which leaves the subject of the contract substantially different from what was contracted for is sufficient. If the party who seeks rescission has an adequate remedy at law, ordinarily he is not entitled to rescind, but in case of repudiation, or of a breach going to the root of the contract, unless the damages can be ascertained with reasonable certainty, rescission is a matter of right, with restitution instead of compensation."

Damages would not be an adequate remedy in the present case. The stock issued to defendant had not been issued previously. It was issued with the approval of the stockholders under plaintiff's stock-option plan in return for agreements of the employees to serve the company. The stock should not be issued except in furtherance of the plan. It is unique and of special value to plaintiff. Further, it would be difficult to place a money value on defendant's services which plaintiff lost by defendant's repudiation of his obligations to serve.

A party who seeks relief by way of rescission must not himself be in substantial default. Schmidt Bros. Constr. Co. v. Raymond Y. M. C. A., 180 Iowa 1306, 1312, 163 N.W. 458, and citations; 17 C. J. S., Contracts, section 423; 12 Am. Jur., Contracts, section 438, page 1019. Here plaintiff did all it was required to do under the option agreements and in issuing the stock upon defendant's exercise of the options.

We have considered Michigan Crown Fender Co. v. Welch, 211 Mich. 148, 178 N.W. 684, 13 A. L. R. 896, strongly relied on by defendant. A contract provided plaintiff would issue 1000 shares of its stock to defendant on February 1, 1916, provided he then assumed his duties as plaintiff's general manager for a period of five years. Defendant was previously employed in a like capacity by a long established, larger company at a higher salary. On October 25, 1917, plaintiff discharged defendant for

cause. The trial court held he had then earned 350 of the 1000 shares which he should be permitted to keep and ordered him to surrender the remaining 650 shares. On appeal it was held the contract did not yield to a construction authorizing division of the stock on the basis of time served under the contract and defendant was entitled to keep it all. The court evidently felt defendant furnished a large part of the consideration by giving up his former job, taking over management and development of plaintiff's business and serving it nearly a year and nine months. The facts are not analogous and the decision is not controlling.

V. Defendant argues that each stock-option agreement involves two entirely separate contracts—an option to purchase the stock and a binding contract of purchase upon exercise of the option, that his agreement to serve was consideration for the former only, and the price he paid for the stock was consideration for the latter. From this it is argued that any breach or failure of consideration related only to the option agreements and not to the contract to purchase when the options were exercised.

We think the trial court correctly held that when defendant exercised the options granted in the agreements, exhibits 5 and 6, he agreed to purchase the stock on the terms and conditions therein specified and they became part of the purchase agreements. Most important of these from plaintiff's standpoint, as we have tried to explain, was defendant's agreement to serve the company. This was consideration not only for the agreement to grant the option, but also for the agreement to issue the stock when the option was exercised. Exercise of the options did not terminate defendant's obligation to serve.

VI. As previously explained, the trial court found defendant, when he exercised the second option, intended to leave plaintiff's employ, failed to reveal such intent to a proper official of plaintiff and was therefore guilty of fraud in this transaction. The court did not find defendant had such intent when the first option was exercised, although he was then negotiating for other employment, and was not guilty of fraud in acquiring the 600 shares. Defendant argues he did not commit fraud in the second transaction. Plaintiff, however, contends defendant was guilty

of fraud in acquiring the 600 shares notwithstanding the court's adverse finding on this point.

Of course plaintiff, although it did not appeal, is entitled to make the contention just referred to in support of the result reached by the trial court. Brandt v. Schucha, 250 Iowa 679, 682, 683, 96 N.W.2d 179, 181, and citations. Our review of this equity case is on the merits de novo, not for correction of errors in findings or other respects. Rule 334, Rules of Civil Procedure. We are not required to determine the correctness of the court's findings on the issue of fraud. Our concern is whether the decree is right. Rasmussen v. Rasmussen, 252 Iowa 414, 422, 107 N.W.2d 114, 119, and citations.

The decree finds sufficient support in findings that defendant's repudiation and breach of the option contracts and failure of consideration for the sales of stock thereunder entitled plaintiff to restitution of the stock upon repayment of the purchase price. As indicated in Division IV hereof we approve these findings. A finding of fraud in either of the sales of stock is not essential to the decree. Callanan v. Keeseville etc. R. Co. (Powers), supra, 199 N. Y. 268, 92 N.E. 747, 752. Fraud is merely one of the grounds on which plaintiff's right to rescind was asserted and an additional ground on which relief was granted as to the second stock transaction.

We see no need of deciding whether either stock transaction was induced by defendant's fraud and decline to do so. Whether or not fraud was committed in either transaction it is clear that at the time thereof defendant was strongly considering accepting other employment and it would be inequitable under the circumstances to permit him to retain the stock.

VII. The parties have argued at length the admissibility of one piece of evidence. Mr. Murray Nelson, in charge of the option agreements for plaintiff, testified he told defendant shortly before the first agreement was signed that if he exercised the option he would be expected to complete his agreed period of service. We refer to this evidence in Division III hereof. The witness also said he reminded defendant of this conversation when he resigned on April 1, 1960. Defendant

contends this testimony was inadmissible as a violation of the parol-evidence rule.

It is not very important whether the above evidence is considered since the terms of the written contracts are controlling. We are clear, however, that in view of the issues of fraud, waiver and promissory estoppel, the evidence was not inadmissible upon the ground urged. Squarely in point is Callanan v. Keeseville etc. R. Co. (Powers), supra, 199 N. Y. 268, 92 N.E. 747, 753. Further, there is nothing in this evidence that varies, alters or contradicts the written agreements nor the effect of the language therein. See 32 C. J. S., Evidence, section 930; 20 Am. Jur., Evidence, section 1099, page 963.

After consideration of all questions presented the judgment is —Affirmed.

All JUSTICES concur except BLISS, J., not sitting, and HAYS, J., who takes no part.