AGRI CAREERS, INC., Appellant,

v.

Myron JEPSEN, Appellee.

No. 89–1930.

Court of Appeals of Iowa.

Sept. 26, 1990.

Jon Fister of Beecher, Rathert, Field, Fister, Walker & Morris, Waterloo, for appellant.

Gary D. Iversen of Mosier, Thomas, Beatty, Dutton, Braun & Staack, Waterloo, for appellee.

Considered by OXBERGER, C.J., and DONIELSON and HAYDEN, JJ.

HAYDEN, Judge.

In February 1988 Myron Jepsen consulted Agri Careers, Inc., an employment agency specializing in swine and farm personnel, in response to an advertisement in the Des Moines Register. Jepsen spoke with Sharon Bunger. According to its advertising brochures, Agri Careers charges no fee unless a potential employer hires one of its candidates. According to company policy, if the employer hires an employee through Agri Careers, the employer is obligated to pay the fee.

During their telephone conversation, Jepsen told Bunger to send him the necessary forms to fill out, rather than give her the necessary information over the telephone. Jepsen received and returned the forms to Bunger on February 18, 1988. Jepsen was then given the names of three candidates pursuant to a phone conversation. Bunger described what she knew about each of the candidates, and Jepsen took down notes on each one.

Bunger told Jepsen the first candidate had a reading deficiency, but Jepsen interviewed him anyway. Next Jepsen interviewed the Riersons. After several interviews, the Riersons accepted a job offer from Jepsen. The Riersons had informed Jepsen they would be willing to relocate, but decided to take another offer and on March 11 informed Jepsen they would not be working for him. Jepsen then called Bunger and talked for approximately eleven minutes. The third person whose name was given to Jepsen, Tim Eckhoff, had already accepted another job.

Around March 20, 1989, Bunger gave Michael Greiner's name to Jepsen. Jepsen interviewed Greiner and later discussed him with Bunger. Jepsen interviewed the Greiners numerous times and talked with Bunger on several occasions. Jepsen at that time told Bunger he was looking on his own as well. However, Jepsen ultimately hired the Greiners, and they began work for him on April 20, 1989. Jepsen did not inform Bunger he had hired the Greiners.

Agri Careers later learned Jepsen had hired the Greiners and sent him a bill for $4,149.50, which was based on a percentage of the Greiners' total compensation package of $19,949.55. Jepsen complained to Agri Careers it had not lived up to its end of the agreement and refused to pay. Agri Careers filed this action for payment. At trial Jepsen alleged Agri Careers had breached its agreement with him because he requested additional information on various employment candidates but never received any. Jepsen also argued Bunger told the Greiners he was difficult to work with and she was not working with Jepsen anymore. Agri Careers argued it supplied Greiner's name, and thus under the terms of the agreement, it was entitled to a fee. The trial court ruled in favor of Jepsen, holding Agri Careers had not delivered the promised services. Agri Careers has appealed.

Agri Careers argues it became entitled to its fee on April 20, 1988, when the Greiners began employment with Jepsen. Agri Careers argues it provided the names and set up the various interviews. Agri Careers points out Jepsen was informed the first candidate had a reading deficiency and could not be held accountable for the Riersons' change of plans. Agri Careers maintains the parties contracted on the basis of results only, and the fee was not contingent on the methods or means through which the employment occurred. Agri Ca-

reers additionally points out Jepsen had told Bunger he was going to find someone on his own.

Our review in this case is limited to matters of law. Iowa R.App.P. 4. We are bound by the trial court's findings of facts if supported by substantial evidence. Iowa R.App.P. 14(f)(1).

■ The question here is whether the plaintiff, Agri Careers, substantially performed its part of the contract, thus entitling it to its fee. The decision depends on the answers to the following questions:

1. Was the plaintiff an employment agency?

2. Was the employee hired by the defendant through contact with the plaintiff?

3. Was there a meeting of the minds the plaintiff would send to the defendant an individual or individuals to be hired as an employee?

4. Was there a meeting of the minds as to the terms of compensation from defendant to plaintiff?

See Bailey Employment Service v. Fairfield Electric, 6 Conn.App. 661, 506 A.2d 1088, 1089–90 (1986).

■ The record is clear the answer to all these questions is "Yes." Next we must determine if any of Agri Career's alleged breaches were material conditions of the contract. 6 S. Williston, A Treatise on the Law of Contracts § 866 (3d ed. 1962 & Supp.1990). "A material condition which is agreed to by the parties must be fulfilled by the party bringing suit in order for such party to recover on the contract." Taylor Enterprise, Inc. v. Clarinda Production Credit Assoc., 447 N.W.2d 113, 116 (Iowa 1989).

In determining whether a failure to render or to offer performance is material, the following circumstances are significant:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) The likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Restatement, Second, of Contracts § 241 (1981).

Jepsen complains Agri Careers failed to return phone calls and to give requested information. He does not claim he was damaged in any manner other than inconvenience. He does not claim he failed to receive the main benefit he expected, which was a suitable employee.

The breaches complained of by Jepsen were only collateral to the main contract. He received what he had bargained for. Agri Careers provided the person whom he later hired. Other than minor inconvenience, Agri Careers' failure to return phone calls or supply additional background information did not damage Jepsen in any material manner.

■ On the other hand, Agri Careers has performed its main part of the contract. They have delivered the name of a suitable employee to Jepsen. Jepsen hired the employee. If Jepsen is allowed to repudiate the contract, Agri Careers will forfeit what it bargained for and performed. "[F]orfeitures are not favored either in law or in equity, and before a forfeiture will be enforced the right thereto must clearly appear to have arisen." 17A C.J.S. Contracts § 407 (1963).

■ Agri Careers is an employment agency. It has substantially performed its end of the bargain. It delivered the name of a suitable candidate, and Jepsen hired him. This was the essence of the contract. It is the material part of the contract. We

will not void or rescind a contract for breach where the breach is not material. *Folkers v. Southwest Leasing*, 431 N.W.2d 177, 181 (Iowa App.1988), *citing Maytag Co. v. Alward*, 253 Iowa 455, 112 N.W.2d 654, 659 (1962). In a like manner, we will not permit Jepsen to repudiate the contract unless the breach is material. *Maytag Co.*, 253 Iowa at 465–66, 112 N.W.2d at 659–60. "Not every breach of a contract affords grounds for rescission. It will not be granted for a mere breach not so substantial as to defeat the object of the parties in making the contract." *Id.; see also* 17A C.J.S. *Contracts* § 422(1) (1963).

Although the trial court did not use the word in its ruling, it apparently found Agri Careers' alleged breaches to be material. It voided the entire contract, even though Jepsen received the benefit of his bargain. We determine the trial court's ruling was not supported by substantial evidence nor by the appropriate legal standard.

■ The factual situation in this case is analogous to a real estate broker's right to commission. *See Peter L. Redburn, Inc. v. Alaska Airlines, Inc.*, 20 Wash.App. 315, 579 P.2d 1354, 1355–56 (1978). The real estate broker need only deliver a ready, able, and willing buyer in order to collect her commission. *Blunt v. Wentland*, 250 Iowa 607, 616, 93 N.W.2d 735, 740 (1958). The burden on an employment agency is even higher, as not only must the agency deliver, but the employer must hire before the fee is due. The employer may avoid paying the fee by not hiring a referral. *Alaska Airlines*, 579 P.2d at 1356.

■ Additionally, Jepsen is estopped from voiding the contract due to any alleged breach by Agri Careers.

> "..., an obligor's acceptance or his retention for an unreasonable time of the obligee's performance, with knowledge of or reason to know of the nonoccurrence of a condition of the obligor's duty, operates as a promise to perform in spite of the nonoccurrence, ..."

*Restatement, Second, of Contracts* § 246(1) (1981).

Jepsen came in contact with Greiner through Agri Careers. He had hired Greiner for several weeks before Agri Careers became aware of this fact. His acceptance and retention of Greiner's services without notifying Agri Careers operates as a promise to perform his end of the contract despite any alleged nonperformances by Agri Careers.

*When Silence and Inaction May Amount to Assent.* Generally speaking, an offeree need make no reply to offers, and his silence and inaction cannot be construed as an assent to the offer; but the relations between the parties or other circumstances may have been such as to have justified the offeror in expecting a reply, and, therefore, in assuming that silence indicates assent to his proposal. Such cases may be thus classified:

> (1) Where the offeree with reasonable opportunity to reject offered goods or services takes the benefit of them under circumstances which would indicate to a reasonable man that they were offered with the expectation of compensation.

> .    .    .    .    .

> (4) Where the offeree takes or retains possession of property [or services] which [have] been offered to him, such taking or retention in the absence of other circumstances is an acceptance. If other circumstances indicate that the taking or retention is tortious, the offeror may nonetheless at his option treat it as an acceptance. [Fn. 7, *Platt v. Penetryn System, Inc.*, 85 N.E.2d 129 (Ohio App.1949), *aff'd* 151 Ohio St. 451, 86 N.E.2d 600 (1949) (where offeree expressly manifested rejection but inconsistently exercised dominion over the property, court gave offeror option of ignoring rejection).]

*1 S. Williston, A Treatise on the Law of Contracts* §§ 91 (3d ed. 1957 & Supp.1990).

We determine the trial court's findings of facts were not supported by substantial evidence. Additionally, as a matter of law the trial court incorrectly applied the law of contracts to the facts of this case.

The trial court's ruling is reversed. Agri Careers is entitled to its proven damages plus interest of ten percent from the filing of the petition. We remand to the district court for entry of judgment in accordance with this decision.

Costs of this appeal are assessed against the appellee.

REVERSED AND REMANDED.