E. H. BREDENSTEINER, Appellant, v. LEONARD OVIATT et al., Appellees.

**VENDOR AND PURCHASER: Rescission—Fraud—Non-variance.** An
1  allegation of *fraudulent representations* of title, as a basis in equity for rescission of a contract of purchase, is sufficiently met by proof of a *mutual mistake* by the parties as to the title. (See Book of Anno., Vol. 1, Sec. 11177, Anno. 10 *et seq.*)

**VENDOR AND PURCHASER: Rescission—Non-fatal Delay.** A delay
2  of over a year in declaring a rescission because of a failure of title to the land contracted for is not shown to be unreasonable, on a record revealing a conflict as to negotiations for a settlement of the controversy.

**ELECTION OF REMEDIES: Affirmation (?) or Rescission (?) of Con-**
3  **tract.** A purchaser of land, after he has given notice of rescission and moved off the land, will not be held to have elected to affirm the contract and to recover damages at law by bringing an action which is entitled neither at law nor in equity, and which prays for the same money relief to which he would be entitled on a rescission, even though the petition as it stands would be triable at law.

**VENDOR AND PURCHASER: Rescission—Rescission by Assignee—**
4  **Effect.** The *assignee* of an option contract does not, by giving notice that he rescinds the contract between the original optionor and optionee, destroy the rights of the original optionee under the contract. Especially is such notice inconsequential when the record shows that the original option had no value.

**VENDOR AND PURCHASER: Rescission—Non-recovery.** The *assignee*
5  of an option contract for the purchase of land may not, upon rescind-

ing, recover of the original optionor (with whom he has no contract) the amount paid for the option.

**VENDOR AND PURCHASER:** Rescission—Use and Occupancy—
6 Measure. When the assignee of an option contract for the purchase of land rescinds after he has been put in possession, his liability for the use and occupancy of the land is measured by the reasonable value thereof, and not by the provisions of the rescinded contract.

**VENDOR AND PURCHASER:** Rescission—Recovery for Betterments.
7 The assignee of an option contract for the purchase of land may, upon rescission, recover of his assignor the value of betterments which he—the assignee—has necessarily been compelled to place on the land.

Headnote 1: 39 Cyc. p. 1252. Headnote 2: 39 Cyc. p. 1430. Headnote 3: 39 Cyc. p. 1430. Headnote 4: 39 Cyc. p. 1670 (Anno.) Headnote 5: 39 Cyc. p. 1670 (Anno.) Headnote 6: 39 Cyc. p. 1670 (Anno.) Headnote 7: 39 Cyc. p. 1670 (Anno.)

Headnote 2: 30 L. R. A. (N. S.) 874; 27 R. C. L. 640. Headnote 6: 27 R. C. L. 655.

*Appeal from Page District Court.*—EARL PETERS, Judge.

SEPTEMBER 21, 1926.

REHEARING DENIED DECEMBER 16, 1926.

Suit for rescission of purchase of land-option contract, and to recover amount paid for it. Cross-petition for use of premises. Decree for defendants on the claim for rescission, and against defendants on cross-petition. Both sides appeal.—*On both appeals reversed.*

*L. H. Mattox* and *Tinley, Mitchell, Ross & Mitchell,* for appellant.

*Ferguson, Barnes & Ferguson* and *Wilson, Keenan & Millhone,* for appellees.

MORLING, J.—Jeremiah Tyler, deceased, devised one third of the net rents of the premises in controversy to his widow, Jane Tyler, during her lifetime, and the remaining two thirds of such rents during her lifetime to Fred H. Tyler and Lois Daw-

son (now Culley). He devised the undivided· half of the fee to Fred H. Tyler, and the remaining half to Elbert A. Read and Fred H. Tyler, as trustees. The will provided that, on the determination of the wife's interest, the land should vest in the trustees, with power, at the termination of the wife's interest, to vest the title in Lois, if then living; if not then living, to her ·issue living; or, if no issue, the property to revert to the estate. There were provisions that the trustees might convey a life· estate to Lois, with remainder to issue; that, if the wife elected to take under the will, and survived· longer than 15 years, the nature and scope of the interest referred to should be determined by the trustees as soon after her death as possible. The widow elected to take under the will, and she and Lois are still·living. Lois has children, one, at least, being a minor at the time of the trial.

Lois gave a mortgage to Elbert A. Read, which is·unsatisfied of record, and·gave to Fred H. Tyler a warranty deed of the undivided half interest, subject to the life interest of Jane and to the mortgage.

On September 15, 1920, Fred ·and wife and Jane gave to Oviatt and Gibson a written option to purchase the land in controversy for $84,000, $1,000 down. This agreement provided that, if the "second party shall further pay to the first parties the additional sum of $3,000 on or before March 1, 1921, then at said time the said first parties agree to deliver to the second parties possession of the said premises * * * and further agree to deliver to the second parties an abstract of title showing good title to the land in the first parties to March 1, 1921, free of all liens and incumbrances whatsoever, and first parties agree that the said second parties shall thereafter have, for a term of 15 years, from May 1, 1921, the further option to make payment of the unpaid balance of $80,000 due on the said land, provided second parties avail themselves of the option to purchase, and provided that the said second parties shall pay to the said first parties for the use of the land from year to year for the said term the interest on the said sum of $80,000 at the rate of 4½ per cent per annum, the first interest payment, in lieu of rent, to be made May 1, 1922, * * * The said second parties herein agree as part of the terms for the option of purchase stipulated herein, and for the use of the lands, to pay the taxes each year

before they become delinquent, beginning with the taxes for the year 1921 * * *''

The Tylers deposited with the bank of which Read was an officer, a warranty deed, to be delivered upon payment of all of the moneys which the option provided for. The agreement contained a 30-day forfeiture clause and other details not necessary to relate. On September 17, 1920 (according to Read, and later, according to Oviatt and Gibson), Read, in response, as he testifies, to Oviatt's inquiry whether he wanted ''to take a gambler's chance with us on it,'' took a one-third interest in the Tyler contract. Plaintiff testifies that he had done business at Read's bank for 5 years. On September 20, 1920, Oviatt and Gibson made a written agreement with plaintiff, Bredensteiner, to assign to him their interest in the Tyler contract for $16,000, payable $5,000 by note due March 1, 1921, and $11,000 on the same date, at which time they were to assign without recourse all their interest in the Tyler contract. Plaintiff agreed ''to assume and carry out all the terms and conditions of said contract obligatory upon the said first parties and to make all the payments payable thereunder after March 1, 1921.''

On February 24, 1921, plaintiff paid the $16,000, and received from Oviatt and Gibson an assignment of the Tyler contract, without recourse on the assignors. The assignment also provided that plaintiff should carry out all the terms and conditions of the Tyler contract obligatory upon Oviatt and Gibson, and make all payments payable after March 1, 1921, ''subject to the conditions thereof.'' Plaintiff took possession of the land and held it until February, 1923, and paid the interest and taxes for the first year. During this time, a controversy arose about the title. On February 27, 1923, plaintiff gave to the Tylers written notice of cancellation, addressed to them only, and stating that he had thereby canceled the contract between the Tylers and Oviatt and Gibson, ''for the reason that you do not have good title to said real estate and have violated your covenant and agreement in said contract to deliver to the said second parties or their assigns an abstract of title * * * showing good title to the said land in yourselves. You are further notified that the undersigned has now quit the possession of said real estate and that said real estate is at your disposal * * * that the undersigned demands of you * * * the sum of $1,043.67, which

is the excess of interest, taxes and amounts paid for improvements over the actual rents and profits * * * "

Shortly afterward, the plaintiff commenced this action against Oviatt and Gibson alone, setting up his contract with them, and alleging that they fraudulently represented to him that the title was good, knowing the representations to be false, and thereby inducing the payment of the $16,000. The petition alleged that the Tyler contract was of no value, and that, because of the fraud, plaintiff had been damaged in the sum of $16,000, for which, with interest and costs, plaintiff claimed judgment. There was no allegation in terms of any rescission. Various amendments were filed, and on January 14, 1924, plaintiff alleged that he had rescinded, and surrendered possession.

On January 24, 1924, plaintiff filed substituted petition, adding the Tylers and E. A. Read as defendants. This substituted petition set out in detail the transactions involved, pleaded fraud, and prayed judgment against Oviatt, Gibson, Read, and the Tylers for $16,000, tendered the value of the rentals, less cost of production, offered to do equity and to put the parties *in statu quo*, and asked for cancellation of the contract with Oviatt and Gibson, and, "so far as this plaintiff is concerned, that the original contract * * * be canceled." Oviatt and Gibson made separate answers. The Tylers answered, and counterclaimed for window shades removed, taxes paid, and for the use of the premises for 1922. Read answered separately.

I.  Obviously, Fred H. Tyler and wife and his mother, Jane, could convey title to no more than an undivided half of the fee. Long after the suit was brought (February 25, 1924), Fred H. Tyler and wife, Jane Tyler, and Lois and husband, and Read, as executor and trustee, signed a quitclaim deed to Read and Tyler, trustees under the will; Lois and husband, and Jane, and Read, as executor and trustee, signed a deed to Fred; Fred and Read, as trustees, signed a deed in favor of Lois; Lois and husband signed a deed in favor of Fred. As has been noted, Read was personally interested in the option contract and in the sale to plaintiff and in maintaining their validity, and also, by reason of his mortgage, in maintaining the deed from Lois to Fred. As trustee, he will, after the death of Jane, have a discretion to exercise with respect to the title in which he is thus adversely interested. No legal

proceedings for conveyance by the trustees or to establish title were taken. No discussion is necessary to demonstrate that Fred and Jane Tyler have no title to the fee in the one-half interest devised in trust. See *Wohlgemuth v. Des Moines Nat. Bank,* 199 Iowa 649; *Dickerson v. Morse,* 200 Iowa 115.

II. Defendants argue that the evidence is insufficient to show fraudulent representations of title. Whether or not Oviatt, Gibson, and Read were guilty of fraud in law, we need not

**1. VENDOR AND PURCHASER: rescission: fraud: non-variance.**

discuss. Plaintiff says that Oviatt and Gibson told him, before he signed the contract, that they would furnish good title. Gibson testifies that plaintiff asked Oviatt if he was getting a good title, and Oviatt told him that the title was to be good; that that was provided for in the Tyler contract. Plaintiff did not then know of Read's interest, and claims to have relied on Read's assurances when he paid the $16,000 without insisting upon being then furnished with abstract of title. Oviatt and Gibson deposited in escrow their warranty deed to plaintiff. Unless these defendants were acting in bad faith, they, as well as the plaintiff, believed that the title to the land which they were contracting about was good. They were mutually mistaken. Plaintiff would not, by the transaction, get the title which both sides assumed that he was paying for and getting. In equity, scienter is not indispensable to rescission. Plaintiff was entitled to a rescission for mistake, though he alleged, but failed to prove, fraud in making the representations. *Hood v. Smith,* 79 Iowa 621; *Smith v. Bricker,* 86 Iowa 285; *McDonald v. Benge,* 138 Iowa 591.

III. Defendants urge that the true condition of the title was discovered about October 1, 1921, and that the delay of more than a year in making rescission, accompanied by a depreciation of $100 per acre in the value of the land, operated as a waiver of the right to rescind, or as an estoppel.

The evidence shows that Read at least was notified, as he says, in the summer, that the title was questionable. One opinion on the title was rendered to plaintiff on October 1, 1921.

**2. VENDOR AND PURCHASER: rescission: non-fatal delay.**

An opinion by another lawyer was rendered to him on August 5, 1922. About that time, a third lawyer was employed, and his opinion concurred with that of the others. The evi-

dence is in conflict as to the date of negotiations which took place between the plaintiff and the defendants, looking toward fixing the title and effecting a settlement. There is evidence that Read had made statements to the effect that, when Jane Tyler died, they could make good title; that he had suggested putting up a bond. An analysis of the evidence, to ascertain just what negotiations were had, and when, is not necessary. Unreasonable delay in rescinding is not shown. See *Strothers v. Leigh*, 151 Iowa 214. That the motive for rescinding, as claimed by defendants, was plaintiff's ability to buy other land at a lower price did not qualify his legal rights, and is immaterial. Furthermore, the objection to the title was not merely that it was defective. There was an entire failure of title to the fee in one half of the land bargained for. Delay under such circumstances does not amount to an affirmance of the contract or a bar to rescission. 39 Cyc. 1429; *Prentice v. Erskine*, 164 Cal. 446 (129 Pac. 585).

IV. Defendants contend that the original petition was at law for damages, and an election of remedies. Before it was filed, plaintiff had given to the Tylers the notice of rescission. He had told Oviatt and Gibson that he was going to move off the farm, and they had negotiated with him, as they say, in behalf of the Tylers for a settlement. Gibson says that they told plaintiff that Tyler would take off $50 an acre; that they were asked how much they would take off, and said it was not their " 'place to take off. This is Mr. Tyler's deal, you are looking to him;' and I said, 'It might be he would take off $100 an acre, for all I know may take the same price as you can get this other farm for;' " and that plaintiff and his son told them that their attorney had said that title could not be made good, and they had concluded to take the other farm at $300 an acre, and move off. The petition did not designate whether it was at law or in equity; but, on the allegations, it would be triable at law. The petition alleged the payment of the $16,000, and demanded judgment for its recovery. If there had been a valid rescission *in pais*, the plaintiff would have been entitled to recover the $16,000 at law. We do not think that the petition can be construed, under these circumstances, into an election to affirm the contract or to recover

3. ELECTION OF REMEDIES: affirmation (?) or rescission (?) of contract.

damages at law for fraud, rather than to recover, on rescission, the purchase price paid. *Smith v. Bricker,* 86 Iowa 285; *Denecke v. Miller,* 142 Iowa 486. *Ellis v. Annis & Rohling,* 187 Iowa 423, 437, is not applicable to the facts of this case.

V. Defendants further argue that, by the notice of rescission of the Tyler contract, plaintiff destroyed it, delivered possession to the Tylers, and disabled himself from restoring the status quo. Plaintiff's contract was with

4. VENDOR AND PURCHASER: rescission: rescission by assignee: effect.

Oviatt and Gibson, and (though then unknown to him, if later so accepted by him) also with Read. Oviatt and Gibson remained parties to the Tyler contract, and their assignment would not abrogate their rights or liabilities under it,—at least in the absence of a novation. Plaintiff could not disaffirm or rescind the contract between the Tylers and Oviatt and Gibson to which he was not a party. See *Bain v. Guntersville Realty Co.,* 211 Ala. 256 (100 So. 128). Oviatt and Gibson knew that plaintiff was leaving the land. It seems to be conceded that the Tylers, and not Oviatt and Gibson, repossessed themselves of it. If so, it was with the acquiescence of Oviatt and Gibson. They apparently were relying upon the absence of any covenant on their part in the option agreement, and upon their having realized all that was coming to them, and upon plaintiff's assumption agreement and the "without recourse" provisions of their contract and assignment to plaintiff, as absolving them from loss or liability. We are of the opinion that they cannot, under these circumstances, successfully claim that plaintiff destroyed their rights under the Tyler contract. Moreover, defendants offered evidence that the land had depreciated $100 an acre. This would more than offset their profit of $50 an acre and the $4,000 that they had paid, and leave of no value the contract to pay a balance of $80,000 for land worth only $72,000. If the Tylers were willing to make concessions, it was that the land would not go back to them; and there is no reason to think that they would not make as much concession to Oviatt and Gibson as they would to plaintiff. The option required the payment of $3,600 per year, besides the taxes, $357.14, for the use of the land; while, according to the testimony of Oviatt and Gibson, the use of the land was worth $12 per acre, or $2,880 per year. On the claims of the defendants and the undisputed evidence,

the option and right to possession were of no value at the time of rescission.

VI. It is urged that, as plaintiff had no contract with the Tylers, and did not pay them the price of the option, he is not entitled to reimbursement from them. We think this is correct.

*5. VENDOR AND PURCHASER: rescission: nonrecovery.*

Plaintiff had the use of the land for two years. His evidence is that it was worth $8.00 per acre per year. The evidence in behalf of the defendants is that it was worth from $10 to $12 per acre per year,—Read says, $14 for the first year. The rescission of the Oviatt and Gibson contract abrogates plaintiff's promise to perform the covenants of the Tyler contract. As the contract is rescinded, recovery for use must be based upon values, rather than on contract price. *Fagan v. Hook,* 134 Iowa 381. Plaintiff paid Tyler, on interest, $3,600, and for taxes, $357.14. The validity and effect of the Tyler contract, as between the Tylers and Oviatt and Gibson, are not in issue, and cannot be affected by decree in this suit. The Tylers, on the record, are entitled to compensation for the use of the land. Plaintiff, having rescinded, is not liable on any covenant, but must account for the value of the use. We think that this should be paid to the Tylers, without prejudice to their right to any balance they may claim due under their contract from Oviatt and Gibson. We find the value of the use of the land for which plaintiff should account to be $4,800, upon which he is entitled to a credit for the $3,600 paid for interest and $357.14 for taxes. Decree should so provide, and for interest from the commencement of the action. There is no evidence that plaintiff took away the window shades.

*6. VENDOR AND PURCHASER: rescission: use and occupancy: measure.*

Plaintiff claims to recover for clover and alfalfa seed, for repairs to windmill and buildings, and for a water system installed. There is testimony, not objected to and not contradicted, that a cement foundation under the barn, costing $25, was put in by plaintiff, and "was absolutely necessary," that plaintiff "repaired the house wherever needed, at a cost of about $50." It is not shown when the expenditures were made, with reference to the time of discovery of the trouble with the title, and there is no other evidence bearing on good faith in

*7. VENDOR AND PURCHASER: rescission: recovery for betterments.*

making them, or on their necessity, and none of enhancement of value by reason of them; nor are the Tylers liable to plaintiff for them. As to Oviatt, Gibson, and Read, we think that the $25 for repairs to foundation of barn and $50 for repairing house should be allowed. Otherwise, the evidence is insufficient to warrant the allowances claimed. See 39 Cyc. 1440, 1441; *White v. Harvey,* 175 Iowa 213.

VII. As contended by defendants, plaintiff's contract was not with the Tylers, nor was the money that he paid for the option contract paid to them. Plaintiff may not, therefore, recover from the Tylers. We do not understand defendants to dispute Read's liability, as an undisclosed party to the contract with plaintiff, or plaintiff's right, on rescission, to recover from the three, Oviatt, Gibson, and Read. The plaintiff should have decree against Oviatt, Gibson, and Read for $16,075, with interest from February 24, 1921, and for all costs.

On both appeals,—*Reversed.*

DE GRAFF, C. J., and EVANS and ALBERT, JJ., concur.