FORREST R. BINKHOLDER et ux., appellees, v. YALE T. CARPENTER et ux., appellants.

No. 52568.

(Reported in 152 N.W.2d 593)

AUGUST 31, 1967.

Max R. Werling, of Tipton, for appellants.

Casterline & Hamiel, of Tipton, for appellees.

STUART, J.—This is an action in equity by the purchasers of a farm to rescind the real-estate contract for mutual mistake and to recover their down payment. There is substantial agreement on the facts. Defendants and their real-estate agent believed and represented to plaintiffs that the 720-acre farm contained 450 acres of cropland and had a crop base for participation in ASC programs of 416 acres making possible a $10,000 payment under the 1964 government program. Plaintiffs verified these figures at the local ASC office. They will hereinafter be referred to as purchasers and defendants as vendors.

The contract was executed December 28, 1963, and purchasers paid $10,000 down. On or about February 25, 1964, a former tenant informed purchasers that the farm did not contain 450 acres of cropland. A remeasurement at the ASC office disclosed there were, in fact, only 362 acres of cropland which reduced the corn base from 416 acres to 345 acres. Maximum government payments on the new base were $8800 rather than $10,000. Parties agree the figures are accurate and it is not disputed that the non-cropland is worth $75 to $150 less per acre than cropland.

Although the contract set out in the printed record does not show it, parties agree purchasers were to make a payment of $5000 on March 1, 1964. This was not paid.

On March 5, 1964, purchasers' attorneys sent the following letter to vendors by restricted certified mail:

"Mr. & Mrs .Forrest Binkholder of Gerald, Missouri, have requested us to write to you to inform you that they have elected to rescind the real estate contract entered into by you and the Binkholders on 12-28-63. This is the contract covering the farm near Wheatland, Iowa. The reason for their election to rescind the contract is the material misrepresentation in the number of acres of cropland on the farm made by you and your real estate agent. Reliable information obtained by Binkholder last week from the DeWitt, Iowa A.S.C. and Soil Conservation offices is that there are 362 acres of cropland on the farm. This is 88 acres less than the 450 acres of cropland which was represented to the Binkholders.

"We assume that under these circumstances you will be willing to refund to Binkholders the $10,000 down payment. We would appreciate it if you would advise us when to expect return of the $10,000. The Binkholders have not taken possession of the farm. However, anything which the Binkholders may have acquired as a result of this contract will be returned to you.

"If we do not hear from you by March 17, 1964, we will assume that you refuse to return the down payment and it will be necessary for us to take legal steps to obtain it."

On March 10 vendors caused a notice of Forfeiture of Real Estate Contracts authorized by chapter 656, Code of Iowa, to be served on purchasers alleging default in failure to make the payment due March 1, 1964. On April 7 purchasers filed this petition in equity. On April 13 the notice of forfeiture with a proper return of service was filed in the office of the county recorder. On April 22 notice of this action in equity was published and a notice of the suit was mailed to vendors.

The trial court held the forfeited contract remained in existence for such legal action as sought here, rescinded the contract for mutual mistake and entered judgment for plaintiff for $10,000 and costs.

I. The first three divisions of vendors' argument are grounded on the proposition that the forefeiture proceedings, which have not been challenged by purchasers, extinguished the contract and left nothing for the court to rescind and terminated any right purchasers may have had to a return of their down payment.

■ ■ Although it has not been argued by appellees, we believe vendors are confronted with a basic issue we cannot ignore and which requires an affirmance of the lower court. "We are committed to the rule that we must affirm the trial court if any sufficient basis appears in the record therefor, even though the ruling was placed upon a different ground", Stover v. Central Broadcasting Co., 247 Iowa 1325, 1330, 1331, 78 N.W.2d 1, and even though plaintiffs do not seek to uphold it on the ground suggested. Stake v. Cole, 257 Iowa 594, 133

1302

N.W.2d 714, 718, 719. See also: Hot Spot Detector v. Rolfes Electronics Corp., 251 Iowa 647, 653, 102 N.W.2d 354; Wilkinson v. County Board of Education, 251 Iowa 876, 880, 102 N.W.2d 924; McCoy v. Martin, 257 Iowa 146, 131 N.W.2d 783, 784. Can vendors in a real-estate contract, by complying with the statutory forfeiture provisions, bar purchasers from recovering their down payment when purchasers had, by their own affirmative act, previously rescinded the contract? We think not.

"Rescission", as used in connection with the cancellation or termination of contracts, has two connotations. A contract may be rescinded by the acts of one of the parties and does not require court action except such action at law as may be necessary to restore the status quo. 17A C. J. S., Contracts, sections 434, 438. Rescission may also be effected by a suit in equity seeking to have the court declare a rescission and restore the status quo. The methods are analogous, but not the same. Both are governed by equitable principles. 17A C. J. S. 504, Contracts, section 413; 13 Am. Jur.2d 496, Cancellation of Instruments, section 1.

"The fact that the same word 'rescission,' is used to designate both the equitable remedy of cancellation and the termination of a contract by the act of a party to it has been productive of no little confusion. Unfortunately in some of the cases for rescission in equity language is used from which it might be inferred that precisely the same principles govern in suits in equity that are applied to determine the right of the party to sue at law. The remedy of rescission in equity must not, however, be confused with the rescission of a contract by a party thereto, as they are essentially different; in the latter case by his rescission or repudiation of the contract a party merely gives notice to the other party that he does not propose to be bound by the contract; whereas in the former case a court of equity grants rescission or cancellation, its decree wipes out the instrument, and renders it as though it does not exist. Moreover, while a court of equity entertains a suit for the express purpose of procuring a contract or conveyance to be cancelled and renders a decree conferring in terms that exact relief, a court of law entertains an action for the recovery of possession

of chattels, or, under some circumstances, for the recovery of land, or for the recovery of damages, and although nothing is said concerning it either in the pleading or in the judgment, a contract or conveyance, as the case may be, is virtually rescinded; the recovery is based on the fact of such rescission and could not have been granted unless the rescission had taken place." 12 C. J. S. 945, Cancellation of Instruments, section 5.

We recognized these two uses of rescission in Butler. Mfg. Co. v. Elliott & Cox, 211 Iowa 1068, 1071, 1072, 233 N.W. 669, which is quoted with approval in United States Hoffman Machinery Corp. v. Carlson, 253 Iowa 304, 309, 111 N.W.2d 271. In Butler Mfg. Co., supra, we said:

"Rescission is the unmaking of the contract. Rescission may be accomplished by acts *in pais*, as well as through resort to the court of equity; but, in order to accomplish rescission *in pais* for breach of warranty (as well as for other causes), there must be, within reasonable time after knowledge of the existence of the cause * * *, an election to rescind. Within reasonable time, too, knowledge of such election, from unmistakable act or notice manifesting it, must be conveyed to the seller * * * and the buyer must restore, or offer to restore, the status quo. Until restoration or offer to make restoration is made, there is ordinarily, at law, no rescission. [Citing authorities]

"When the buyer rescinds, he renounces the contract and his ownership of the property obtained thereunder, and invests the seller with the ownership as if the contract had not been made. Continued exercise by the buyer of ownership or dominion of the property after notice of rescission and offer to return necessarily asserts ownership in the buyer, denies the ownership of the seller, and waives or withdraws the notice. [Citing authorities]"

Application of these statements to the particular facts before us discloses that purchasers combined the two methods of rescission. The letter of March 5 to vendors from purchasers' attorneys met the requirements of a "rescission in pais". However, instead of bringing a law action to recover their down payment, they brought their action in equity seeking a rescis-

sion and general equitable relief as well as the recovery of the down payment.

Ordinarily, equity does not take jurisdiction to declare a rescission when purchaser has an adequate and complete remedy at law by the recovery of the payments made. 12 C. J. S. 948, Cancellation of Instruments, section 9. However, equity did take jurisdiction and the matter was tried there without objection. We do not believe this fact would change the relationship between the forfeiture proceedings and the pre-existing rescission.

If a contract were properly rescinded by an act of one of the parties, there would be no contract to forfeit. The side obligations which resulted from the termination of the contract would remain for legal determination if necessary to restore the status quo. 17A C. J. S., Contracts, section 440.

We therefore hold the rescission preceded the forfeiture and the forfeiture did not bar purchasers from bringing an action to recover the down payment, and equity, having taken jurisdiction without objection, could entertain such action.

In view of our consideration and determination of this issue, it is not necessary for us to pass upon the effect of an unchallenged forfeiture on purchasers' right to recover a down payment. We might comment without so holding, however, that it appears extremely doubtful vendors, who were in default and could not deliver the number of crop acres contemplated by both parties, were in a position to forfeit the contract. Watland v. Quaintance, 186 Iowa 1271, 1274, 1275, 171 N.W. 692; McLain v. Smith, 201 Iowa 89, 94, 202 N.W. 239; Sarazin v. Kunz, 226 Iowa 1309, 1312, 286 N.W. 471; Kilpatrick v. Smith, 236 Iowa 584, 591–593, 19 N.W.2d 699.

II. Vendors claim purchasers' proper remedy was either reformation of the contract or an action for damages and that rescission was not available where there was a mere shortage of acres resulting from a mutual mistake of fact. We do not agree.

A petition for the cancellation of a contract by a court of equity is directed to the sound discretion of that court exercised in the light of general equitable principles. Sours v.

Colvin, 244 Iowa 40, 44, 55 N.W.2d 462; 13 Am. Jur.2d 500, Cancellation of Instruments, section 4; 12 C. J. S. 944, Cancellation of Instruments, section 3.

"* * * a court of equity will more readily rescind an unperformed contract than it will an executed one. In such a case the ground for rescission is necessarily a ground of defense to the specific performance of the contract. On the merits, the denial of specific performance of an unperformed contract amounts to a rescission of it." Capps v. Clark, 196 Iowa 758, 764, 195 N.W. 372; 12 C. J. S. 943, Cancellation of Instruments, section 1; 13 Am.Jur.2d 505, Cancellation of Instruments, section 10.

"On the question of the right of a vendee to demand rescission of a contract to purchase real estate upon the ground of a shortage in area, there is some conflict in the authorities. It is held in some jurisdictions that rescission may be had if the shortage is so great or of such a character as to indicate that the minds of the parties did not meet on the subject matter of the contract, so that it never went into effect. [Citing cases]

"A careful analysis of the foregoing cases will disclose, however, that the right of rescission was not, in a majority of them, based alone upon a shortage in area. No doubt there might be such a shortage in the area of a tract as to justify rescission." Golly v. Grinnell College Foundation, 204 Iowa 319, 321, 322, 213 N.W. 252.

Here we do not have a shortage in the total number of acres but rather a deficiency in the quality of the farmland. There was about 20 percent less crop acres than either party believed the farm contained. This fact definitely affected the productivity of the farm and reduced the possible government payments. The contract had been executed only a little over two months before the notice of rescission. Purchasers had not taken possession of the farm and tendered back the abstract which was the only property of vendors they had in their possession. In very few instances would it be so simple to place the parties in status quo. Under these circumstances rescission was a proper remedy.

Vendors argue they have not been placed in status quo by the trial court's decision as they have paid a $3000 real-estate commission and because the rescission occurred so late in the spring they were unable to find a local farm tenant and had to send a farmer from Ohio and finance his purchase of farm machinery costing $5350. We do not interpret the requirement to return the parties to status quo to apply to such matters. Parties are returned to the status quo when benefits received under the contract have been returned and liabilities incurred have been removed. No cases have been called to our attention where sales expenses or expenses incurred after the property has been returned have been held to bar rescission.

In Voorhees v. Baier, 194 Iowa 1320, 1329, 1330, 191 N.W. 125, we said:

"Appellant argues that appellees could not rescind without restoring the status quo.

"There was nothing, under the circumstances, required on the part of the appellees to restore the status quo. They had received nothing whatever under the contract—neither title nor possession. They had nothing but the outstanding, unrecorded executory contract, upon which the appellant had himself served notice of forfeiture. The situation did not call for any affirmative act on the part of the appellees before the service of their notice of rescission of the contract. They had nothing to restore before they made rescission. Wilhelm v. Fimple, 31 Iowa 131; Primm v. Wise & Stern, 126 Iowa 528; Aurand v. Perry Town Lot & Imp. Co., supra."

Vendors cite Henn v. McGinnis, 182 Iowa 131, 165 N.W. 406; Gardner v. Kiburz, 184 Iowa 1268, 168 N.W. 814; Capps v. Clark, 196 Iowa 758, 195 N.W. 372, and Golly v. Grinnell College Foundation, 204 Iowa 319, 213 N.W. 252. They are all distinguishable.

In Henn v. McGinnis, supra, vendor brought an action in equity to reform the contract and to recover judgment for the value of the excess number of acres. Purchaser claimed all plaintiff was entitled to was a rescission. Rescission was not sought by either party. In holding vendor was entitled to reformation and judgment for the excess acreage, we stated: "The plaintiff

could not have demanded a rescission." But we also said: "In any view of the case, the utmost that the defendant could contend for would be the right of election between a rescission and performance on his part." Loc. cit. 135. We do not now comment on the availability of rescission to one party and not the other, but quote this statement merely to show the court at that time considered this a possibility and made a distinction between rescission by a vendor and purchaser.

Gardner v. Kiburz, supra, was an action for damages by vendee seeking to abate the purchase price of a 500-acre farm by the per acre price for a 15-acre shortage. The right to rescind was not claimed or discussed. In that case we made a pro tanto reduction and said full justice was done to both parties thereby. The shortage was only 3 percent of the total acreage.

Capps v. Clark, supra, was an attempted rescission of an executed contract. Rescission was refused but a pro tanto reduction was granted. The opinion differentiated between executed and executory contracts. We have previously quoted therefrom in support of the granting of a rescission in this instance.

Golly v. Grinnell College Foundation, supra, was an action in equity by vendee for an accounting and the recovery of sums expended by him while in possession for over five years. There was a shortage of acreage. Purchaser asked vendor for a pro tanto reduction and was refused. He stopped making payment on the contract. Vendor forfeited the contract and re-entered into possession. Purchaser brought this action on the theory that vendor had no right to forfeit the contract and its attempt to do so, acquiesced in by purchaser, constituted a mutual rescission. We sustained the forfeiture saying: "Mere shortage in acreage is not a ground for the rescission of a contract to convey land." We cited as authority Henn v. McGinnis and Capps v. Clark, both supra. This statement was followed by the quote which we have heretofore set out in support of the granting of rescission here which makes it clear the above statement was not intended to apply to all cases.

1308

We believe a court of equity in exercising its sound discretion under all circumstances present here properly granted rescission for the proven deficiency in crop acres.

III. Purchasers did not make the $5000 payment due under the contract March 1, 1964. Vendors claim this placed them in default and they were therefore not entitled to ask a court of equity to rescind a contract which they themselves failed to perform, citing Fitchner v. Walling, 225 Iowa 8, 12, 279 N.W. 417.

"A party who seeks relief by way of rescission must not himself be in substantial default." Maytag Co. v. Alward, 253 Iowa 455, 112 N.W.2d 654, 660, 96 A. L. R.2d 162; Fitchner v. Walling, supra; Schmidt Bros. Constr. Co. v. Raymond Y.M.C.A., 180 Iowa 1306, 1312, 163 N.W. 458; Atlas Brewing Co. v. Huffman, 217 Iowa 1217, 1226, 252 N.W. 133.

It is true purchasers were in default when they failed to make the March 1 payment. It is also true $5000 is a substantial sum of money. However, we do not believe the default which occurred here should bar purchasers from rescinding the contract.

On or about February 25, 1964, purchasers discovered the farm had 88 acres of cropland less than either party believed. There was no way vendors could supply this deficiency. Instead of making the $5000 payment on March 1, purchasers within four days advised vendors by letter from their attorneys of their election to rescind and their reasons therefor. It would be little less than absurd to require purchasers to make this payment at a time they knew vendors could not deliver what was contracted for and place them in a position of asking for the return of $15,000 rather than $10,000.

"In a case such as is here presented, the law does not require that the purchaser shall pay the balance of the purchase price or tender the same before he can rescind the contract and seek the recovery of the payment already made. The breach on the part of the vendor is the basis of the right of the vendee to rescind and to recover the purchase price. In a situation such as we have presented in this case, where the vendee had received nothing whatever by way of deed, possession of the

property, or otherwise, it was not incumbent upon him, upon the discovery of the vendor's breach, to perform either by paying the balance of the purchase price or by tendering the same, before he could avail himself of the right of rescission. He acted promptly in the matter, and by his notice advised the appellant fully of the basis of his rescission. As applied to the facts in this case, nothing more than this was required." Voorhees v. Baier, 194 Iowa 1320, 1329, 191 N.W. 125.

The defaults held fatal to a party's right to rescind in the cited cases were far different from the default of the purchaser here. We hold failure to make a payment due on the contract four days before a notice of rescission is given, at a time when purchaser knew of vendor's default, under circumstances which he could not remedy, is not of such substance that purchaser is deprived of the right to rescind.

IV. Vendors suggest the motive for the rescission was the fact that the government had decided not to take purchasers' Missouri farm. Proof of this point is not satisfactory, but in any event, motive for exercising a legal right to rescind is immaterial. Bredensteiner v. Oviatt, 202 Iowa 993, 998, 210 N.W. 133; 17A C. J. S. 505, Contracts, section 413.

For the reasons stated, we affirm.—Affirmed.

All JUSTICES concur except LEGRAND, J., who takes no part.