Charles W. **POTTER** and Sue E. **Potter, Appellees,**

v.

Merrill J. **OSTER, Appellant.**

No. 87–26.

Supreme Court of Iowa.

June 15, 1988.

David H. Luginbill of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, Des Moines, and W.D. Sindlinger of McCrindle, Bergstrom & Sindlinger, Cedar Falls, for appellant.

David J. Mansheim of Klinkenborg, Hansmann & Mansheim, Parkersburg, for appellees.

Considered by LARSON, P.J., and SCHULTZ, CARTER, NEUMAN and SNELL, JJ.

NEUMAN, Justice.

This is a suit in equity brought by the plaintiffs to rescind an installment land contract based on the seller's inability to convey title. The question on appeal is whether, in an era of declining land values, returning the parties to the status quo works an inequitable result. We think not. Accordingly, we affirm the district court judgment for rescission and restitution.

The facts are largely undisputed. Because the case was tried in equity, our review is de novo. Iowa R.App.P. 4. We give weight to the findings of the trial court, particularly where the credibility of witnesses is concerned, but we are not bound thereby. Iowa R.App.P. 14(f)(7).

The parties, though sharing a common interest in agribusiness, present a study in contrasts. We think the disparity in their background and experience is notable insofar as it bears on the equities of the transaction in issue. Plaintiff Charles Potter is a farm laborer and his wife, Sue, is a homemaker and substitute teacher. They have lived all their lives within a few miles of the real estate in question. Defendant Merrill Oster is an agricultural journalist and recognized specialist in land investment strategies. He owns Oster Communications, a multimillion dollar publishing concern devoted to furnishing farmers the latest in commodity market analysis and advice on an array of farm issues.

In May 1978, Oster contracted with Florence Stark to purchase her 160–acre farm in Howard County, Iowa, for $260,000 on a ten-year contract at seven percent interest. Oster then sold the homestead and nine acres to Charles and Sue Potter for $70,000. Potters paid $18,850 down and executed a ten-year installment contract for the balance at 8.5% interest. Oster then executed a contract with Robert Bishop for the sale of the remaining 151 acres as part of a package deal that included the sale of seventeen farms for a sum exceeding $5.9 million.

These back-to-back contracts collapsed like dominoes in March 1985 when Bishop failed to pay Oster and Oster failed to pay Stark the installments due on their respective contracts. Stark commenced forfeiture proceedings. Potters had paid every installment when due under their contract with Oster and had included Stark as a joint payee with Oster on their March 1, 1985, payment. But they were financially unable to exercise their right to advance the sums due on the entire 160 acres in order to preserve their interest in the nine acres and homestead. As a result, their

interest in the real estate was forfeited along with Oster's and Bishop's and they were forced to move from their home in August 1985.

Potters then sued Oster to rescind their contract with him, claiming restitution damages for all consideration paid. Evidence at trial disclosed that prior to the forfeiture, Potters had paid principal and interest totalling $59,886.25. They had made improvements to the residence costing $2758.74, excluding their own labor. Pursuant to the contract, they had paid real estate taxes of $2024.38 and insurance premiums of $3041.46. Miscellaneous expenses for closing the transaction and relocating after forfeiture totalled $1000. The principal balance remaining on their contract with Oster was $27,900.

Trial testimony also revealed that the market value of the property had decreased markedly since its purchase. Expert appraisers valued the homestead and nine acres between $27,500 and $35,000. Oster himself placed a $28,000 value on the property; Potter $39,000. Evidence was also received placing the reasonable rental value of the property at $150 per month, or a total of $10,800 for the six-year Potter occupancy.

The district court concluded the Potters were entitled to rescission of the contract and return of the consideration paid including principal and interest, cost of improvements, closing expenses, and taxes for a total of $65,169.37. From this the court deducted $10,800 for six years' rental, bringing the final judgment to $54,369.37.

On appeal, Oster challenges the judgment on two grounds. First, he claims Potters had an adequate remedy at law for damages which should have been measured by the actual economic loss sustained. Second, Oster contends the trial court failed to strike an equitable balance between the parties by ignoring Potters' alleged failure to mitigate their damages.

I. Judicial remedies for breach of contract serve to protect one or more of the following interests of the promisee:

(a) "Expectation interest" in having the benefit of the bargain, placing the promisee in as good a position as if the contract had been fully performed;

(b) "Reliance interest" in reimbursement for the loss caused by reliance on the contract, placing the promisee in as good a position as if the contract had not been made; or

(c) "Restitution interest" in having restored to the promisee the benefit conferred upon the party in breach.

*See* Restatement (Second) of Contracts § 344 (1979); *see also* E. Farnsworth, *Contracts* § 12.1, at 811–15 (1982) (hereafter Farnsworth).

Each remedy tailors the reimbursement to the loss sustained. Recovery based on expectation interest may include lost profit because the promisee is reimbursed for the actual value of the contract had it been performed. Farnsworth at 813. Reimbursement based on reliance interest includes expenses of preparation, performance, or lost opportunities to make other contracts. *Id.* In contrast to protection of expectation and reliance interests,

the object of restitution is not the enforcement of a promise, but rather the prevention of unjust enrichment. The focus is on the party in breach, rather than on the injured party, and the attempt is to put the party in breach back in the position in which he would have been had the contract not been made. The party in breach is required to disgorge what he has received in money or services by, for example, returning the benefit to the injured party who conferred it on him. [The restitution interest] is ordinarily smaller than either the expectation or the reliance interest. Although recovery measured by either of these interests takes account of cost incurred in conferring a benefit on the party in breach, the restitution interest includes neither the injured party's lost profit nor the part of his expenditures in reliance that conferred no benefit on the party in breach.

*Id.* at 814.

Remedies for breach of contract may be "specific," that is, providing the injured party with the promised performance, or

"substitutional," giving the promisee something in substitution for the promised performance. *See* Farnsworth § 12.2, at 815. Whether a judicial remedy is "legal" or "equitable" turns on the nature of the relief sought.

The principal legal remedy to enforce a promise is a judgment awarding a sum of money. This is usually substitutional relief, as when the sum is damages to compensate the injured party for breach; but it may also be specific, as when the sum is the amount due under a contract. The principal equitable remedy to enforce a contract is an order requiring specific performance of the contract or enjoining its nonperformance. This is specific relief.

*Id.* Remedies for a seller's breach of a land installment contract may protect any of the three interests and be legal or equitable, as well as specific or substitutional. *See generally* R. Hillman, *Contract Remedies, Equity, and Restitution in Iowa,* §§ 7.1–.4, at 150–72 (1979) (hereafter Hillman). In general, equitable relief will be granted only when legal remedies are inadequate. *Berry Seed Co. v. Hutchings,* 247 Iowa 417, 422, 74 N.W.2d 233, 236 (1956).

█ Rescission is a restitutionary remedy which attempts to restore the parties to their positions at the time the contract was executed. Note, *Forfeiture and the Iowa Installment Land Contract,* 46 Iowa L.Rev. 786, 793 (1961). The remedy calls for a return of the land to the seller, with the buyer given judgment for payments made under the contract plus the value of improvements, less reasonable rental value for the period during which the buyer was in possession. *Id.; accord Lutz v. Cunningham,* 240 Iowa 1037, 1055–56, 38 N.W. 2d 638, 647 (1949); *Breja v. Pyrne,* 94 Iowa 755, 758, 64 N.W. 669, 670–71 (1895). The remedy has long been available in Iowa to buyers under land contracts when the seller has no title to convey. *See, e.g., Fulton v. Chase,* 240 Iowa 771, 774, 37 N.W.2d 920, 922 (1949); *Dee v. Collins,* 235 Iowa 22, 25, 15 N.W.2d 883, 886 (1944); *Dolliver v. Elmer,* 220 Iowa 348, 350, 260 N.W. 85, 86 (1935); *see also* Hillman, § 7.2, at 157.

Rescission is considered an extraordinary remedy, however, and is ordinarily not available to a litigant as a matter of right but only when, in the discretion of the court, it is necessary to obtain equity. *Capps v. Clark,* 196 Iowa 758, 763, 195 N.W. 372, 375 (1923). Our cases have established three requirements that must be met before rescission will be granted. First, the injured party must not be in default. *Maytag v. Alward,* 253 Iowa 455, 466, 112 N.W.2d 654, 660 (1962); *Binkholder v. Carpenter,* 260 Iowa 1297, 1308, 152 N.W.2d 593, 600 (1967). Second, the breach must be substantial and go to the heart of the contract. *Maytag,* 253 Iowa at 464, 112 N.W.2d at 660; *Nora Springs Cooperative Co. v. Brandau,* 247 N.W.2d 744, 749 (Iowa 1976). Third, remedies at law must be inadequate. *Berry Seed Co.,* 247 Iowa at 422, 74 N.W.2d at 236 (1956).

The first two tests are easily met in the present case. Potters are entirely without fault in this transaction. They tendered their 1985 installment payment to Oster before the forfeiture, and no additional payments were due until 1986. On the question of materiality, Oster's loss of equitable title to the homestead by forfeiture caused not only substantial, but total breach of his obligation to insure peaceful possession and convey marketable title under the Oster–Potter contract.

█ Only the third test—the inadequacy of damages at law—is contested by Oster on appeal. Preliminarily, he questions the necessity of any judicial intervention to undo the contract, claiming it was effectively rescinded by the Stark–Oster forfeiture. From this premise, Oster argues the inexpediency of equitable relief and the adequacy of damages at law. We find the argument unpersuasive. It is true that Stark's forfeiture of Oster's interest in the property rendered performance under the Oster–Potter contract impossible. But there is no evidence in the record that either party acted to unilaterally rescind the agreement between them. Whether a rescission is accomplished *in pais,* or through resort to a court of equity, the side obligations resulting from termination of

the contract still remain for judicial determination in order to restore the status quo. *See Binkholder,* 260 Iowa at 1304, 152 N.W.2d at 596–97.

▮ Restoring the status quo is the goal of the restitutionary remedy of rescission. Hillman § 3.3(F), at 74; *see also Kilpatrick v. Smith,* 236 Iowa 584, 596, 19 N.W. 2d 699, 705 (1945). Here, the district court accomplished the goal by awarding Potters a sum representing all they had paid under the contract rendered worthless by Oster's default. Oster contends that in an era of declining land values, such a remedy goes beyond achieving the status quo and results in a windfall to the Potters. Unwilling to disgorge the benefits he has received under the unfulfilled contract, Oster would have the court shift the "entrepreneural risk" of market loss to the Potters by limiting their recovery to the difference between the property's market value at breach ($35,000) and the contract balance ($27,900). In other words, Oster claims the court should have awarded expectancy, rather than restitution, damages. For a number of reasons, the district court rejected this "benefit of the bargain" approach, and rightly so.

First, Potters did not sue for expectancy damages. Theirs was not a claim based on the benefit they would have received had the contract been fulfilled; theirs was a claim for restitution of sums paid which unjustly enriched Oster at their expense. By selecting the remedy of rescission and restitution, rather than expectation or reliance damages, Potters chose what is usually the smallest awardable recovery. *See* Farnsworth, at 814. Though declining land values may have motivated their selection of remedies in this case, their motive for exercising a legal right to rescind is immaterial if the remedy is otherwise appropriate. *Binkholder,* 260 Iowa at 1309, 152 N.W.2d at 600.

Second, legal remedies are considered inadequate when the damages cannot be measured with sufficient certainty. *Berry Seed Co. v. Hutchings,* 247 Iowa 417, 422, 74 N.W.2d 233, 237 (1956). Contrary to Oster's assertion that Potters' compensation should be limited to the difference between the property's fair market value and contract balance at time of breach, expectation damages are correctly calculated as the difference between contract price and market value *at the time for performance.* *See* Hillman § 7.1(A), at 150 (citing *Yokum v. McBride,* 56 Iowa 139, 8 N.W. 705 (1881) and *Sweem v. Steele,* 5 Iowa 352 (1857)). Since the time of performance in this case would have been March 1990, the market value of the homestead and acreage cannot be predicted with any certainty, thus rendering such a formulation inadequate.

Most importantly, the fair market value of the homestead at the time of forfeiture is an incorrect measure of the benefit Potters lost. It fails to account for the special value Potters placed on the property's location and residential features that uniquely suited their family. For precisely this reason, remedies at law are presumed inadequate for breach of a real estate contract. *Dee v. Collins,* 235 Iowa 22, 24, 15 N.W.2d 883, 885 (1944); Hillman § 7.1, at 151. Oster has failed to overcome that presumption here. His characterization of the transaction as a mere market loss for Potters, compensable by a sum which would enable them to make a nominal down payment on an equivalent homestead, has no legal or factual support in this record. As one commentator has observed, acreages are not fungible goods:

> Unlike the purchaser of goods who, after receiving an anticipatory repudiation, can go out on the market and purchase a market substitute, and therefore suffers damages measured by the difference between the contract and market prices at the time buyer could reasonably cover, the purchaser of real property cannot cover because real property is considered to be unique—there is no market substitute.

Hillman § 7.1, at 151.

From Oster's perspective, Potters actually benefited from the forfeiture because their purchase, in light of subsequent events, proved to be unprofitable. But the record convinces us that profit measured

by Wall Street standards was of little consequence to Potters. This was the Potters' home, the place their first son was born, the place Charles Potter testified "was worth everything we ever gave for it, because we planned on living there the rest of our lives."

In summary, we find no error in the trial court's conclusion that Potters were entitled to rescission of the contract and return of all benefits allowed thereunder, less the value of reasonable rental for the period of occupancy.

■ II. Oster also challenges the trial court's refusal to reduce the award based on Potters' alleged failure to mitigate their loss. The record reveals that when Charles Potter learned of the impending forfeiture, he offered Stark the balance of $27,900 due on Potters' contract with Oster ($20,000 more than the installment due March 1) in order to protect their interest in the property. Stark rejected the offer but indicated a willingness to sell Potters the property for $50,000. Because Potters had already paid nearly $60,000 toward the property, they considered the counter offer unreasonable. They made no mention of this communication to Oster.

Oster claimed at trial that had he known Stark was willing to negotiate on any terms for the Potter homestead, he could have attempted to bargain with her to avoid the forfeiture. But the record amply supports the trial court's conclusion that, beyond this bald assertion, Oster offered insufficient proof to prevail on this defense. The record is devoid of any convincing evidence that Oster would have been willing or able to make the financial commitment necessary to save the Potters' acreage, in light of his perception of its diminished value. The assignment is without merit.

AFFIRMED.