James C. RISSE and Kathryn K. Risse, Appellees,

v.

Keith R. THOMPSON and Janene F. Thompson, Appellants.

No. 89–1264.

Supreme Court of Iowa.

June 19, 1991.

W. Wayne Saur of Saur & Johnson, Oelwein, for appellants.

Larry F. Woods, Oelwein, for appellees.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, NEUMAN and SNELL, JJ.

SCHULTZ, Justice.

In this appeal, plaintiffs, vendees under a real estate contract (contract), seek rescission of the contract entered with defendants, vendors under the contract. Plaintiffs also seek damages arising from defendants' alleged breach of the contract. Defendants, who forfeited the contract, counterclaim for damages arising from plain-

tiffs' action to rescind the contract. The trial court rescinded the contract and awarded plaintiffs damages. The court of appeals reversed the judgment of rescission and awarded defendants damages. We hold that plaintiffs were not entitled to rescission, and defendants were not entitled to a judgment on their counterclaim. Accordingly, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand.

In 1973, Keith R. Thompson and his wife, who died in 1977, purchased a home on lot 23 in a Fairbank addition. The Thompsons financed the purchase of this home and lot by entering a mortgage agreement with Home Savings and Loan (S & L). In 1973 and 1974, John Woods and Woods Construction, Inc. (Woods) constructed a driveway and added a bedroom to this home. This construction extended on adjoining property located on lots 22 and 24. Woods owned these two lots and agreed to sell the necessary portions of the lots to the Thompsons. Woods prepared an invoice which included the purchase price and a description of the necessary portions of lots 22 and 24. Woods added the purchase price to the Thompsons' outstanding account for the previous home improvements. At that time, Woods did not deliver a deed to the Thompsons.

In January 1984, defendants, Thompson and his present wife, Janene F. Thompson, entered a written installment contract to sell the home to plaintiffs, James C. Risse and Kathryn K. Risse, for $12,000 down and the assumption of the outstanding mortgage obligation with S & L. Plaintiffs were unaware that "lot 23" was not an accurate description of the property sold; however, all parties concede that the sale contemplated boundary lines located on lots 22 and 24. The contract was not recorded. Plaintiffs took possession of the home in February 1984 and made monthly payments through June 1984.

The parties knew, and the written contract provided, that S & L had the option to declare the entire loan balance due. S & L learned of the contract sale and called the loan balance due on June 21, 1984. On July 3, defendants paid Woods the entire amount owed for the portions of lots 22 and 24 and directed Woods to deed the property directly to plaintiffs. The abstract was then updated on July 26.

In July 1984, plaintiffs applied for and promptly received approval for a loan to cover the purchase price of the property. On August 16, plaintiffs' attorney issued a title opinion identifying several problems, the need for an inheritance tax clearance, and a survey to obtain an accurate description of the property. These problems were corrected by making title corrections, including corrective deed descriptions for the partial lots. Plaintiffs' attorney then accepted title on lots 23 and portions of lots 22 and 24 as marketable and completed a second title opinion on December 24. Plaintiffs were ready for closing which was scheduled for December 31, 1984, at S & L.

The December 31 closing was aborted when a dispute arose over which party was responsible for payment of survey and attorney fees, and over back interest that accrued from June to December 1984 when no payments were made. The parties' attorneys continued to negotiate these differences through January 1985. Plaintiffs' attorney continued to maintain the position with defendants' attorney that plaintiffs were not responsible for payment of the back interest owed S & L. Plaintiffs became discouraged by the unsuccessful negotiations and moved out of the house on February 15, 1985, without notifying defendants. While the house stood empty, the water pipes froze causing damage to the house.

On February 21, 1985, plaintiffs' attorney notified defendants' attorney that plaintiffs intended to rescind the contract. On March 7, defendants served notice of forfeiture of the contract and completed the proceedings required by Iowa Code chapter 656. Defendants took possession of the house but faced a foreclosure action by S & L. On December 13, 1985, defendants paid S & L an additional $7,000 to make the loan current and conveyed lot 23 to S & L to avoid foreclosure. Plaintiffs remained record titleholders to the portions

of lots 22 and 24. On January 13, 1986, S & L paid plaintiffs $3,500 for a quitclaim deed to the portions of lots 22 & 24.

Plaintiffs commenced this action in June 1985. This action consisted of two divisions—one in equity, seeking rescission of the contract and equitable relief; the other in law, seeking damages for breach of contract. Defendants counterclaimed, seeking the unpaid monthly payments for the time plaintiffs lived in the house but made no payments, the $7,000 that defendants advanced to S & L to avoid foreclosure, and the $3,500 plaintiffs received from S & L for a quitclaim deed to portions of lots 22 and 24. As a defense to defendants' counterclaim, plaintiffs allege that defendants' forfeiture action constituted an election of remedies precluding defendants from seeking further damages.

The action was tried to the court. The court rescinded the contract and entered judgment for plaintiffs predicated on a sum consisting of plaintiffs' down payment, monthly payments, and a survey and loan fee. From this sum, the court deducted eight months of rent[1] and the $3,500 plaintiffs received from S & L.

On appeal, defendants maintain that the trial court erred (1) in finding that defendants breached the contract entitling plaintiffs to rescission; and (2) in failing to award damages on their counterclaim.

■ I. *Equitable action for rescission.* In this case, plaintiffs filed an equitable action for rescission after defendants initiated forfeiture proceedings. Plaintiffs gave notice of rescission before defendants' forfeiture; therefore, the forfeiture does not bar plaintiffs from seeking relief for return of their down payment. *Binkholder v. Carpenter,* 260 Iowa 1297, 1304, 152 N.W.2d 593, 597 (1967). However, we must determine whether the evidence justifies the remedy of rescission of the contract.

■ For an installment contract, we described the remedy of rescission and its elements as follows:

Rescission is a restitutionary remedy which attempts to restore the parties to their positions at the time the contract was executed. The remedy calls for a return of the land to the seller, with the buyer given judgment for payments made under the contract plus the value of improvements, less reasonable rental value for the period during which the buyer was in possession. The remedy has long been available in Iowa to buyers under land contracts when the seller has no title to convey.

Rescission is considered an extraordinary remedy, however, and is ordinarily not available to a litigant as a matter of right but only when, in the discretion of the court, it is necessary to obtain equity. Our cases have established three requirements that must be met before rescission will be granted. First, the injured party must not be in default. Second, the breach must be substantial and go to the heart of the contract. Third, remedies at law must be inadequate.

*Potter v. Oster,* 426 N.W.2d 148, 151 (Iowa 1988) (citations omitted). In this case, we examine the second element of a rescission remedy—a substantial breach going to the heart of the contract. The rescission portion of plaintiffs' action was pled and tried in equity; therefore, our review is de novo. Iowa R.App.P. 4.

The trial court's determination of breach was premised on a finding that defendants did not own all of the property that they purported to sell plaintiffs. Under our de novo review, we find that defendants made home improvements after entering an oral agreement with Woods to obtain title to the portions of lots 22 and 24. We conclude, therefore, that at the time the installment contract was executed, defendants held record title to lot 23 and equitable title to the portions of lots 22 and 24 that are in dispute. Furthermore, defendants secured

---

**1.** Subsequently, both parties agreed that the court should have deducted thirteen rather than eight months of rent.

legal title to all of the property before the closing date.

■ The general rule is that merchantable title, which a vendor must furnish under an executory contract for the sale of land, must be furnished on the date required under the contract. *Wemer v. Long,* 185 N.W.2d 243, 247 (Iowa 1971); *McCubbin v. Urban,* 247 Iowa 862, 864–65, 77 N.W.2d 36, 38 (1956). Consequently, a vendee may not support a breach of contract claim by relying on a defect in a vendor's title prior to the closing time provided in the contract, especially if the defect can be removed. *Wemer,* 185 N.W.2d at 247.

■ In this case, plaintiffs claim that defendants were required to deliver marketable title on the date S & L called the loan due. This claim has no merit because it ignores the plain language in the contract that a warranty deed was to be delivered "[u]pon payments of all sums owing by Buyers to Sellers...." Plaintiffs did not tender payment on that date. Furthermore, the parties agreed on the closing date which they scheduled for December 31, 1984. The abstract was updated and title corrections were made so that title was marketable on the scheduled closing date. However, the parties' disagreements prevented closing on December 31.

■ Under this record, we conclude that defendants did not commit a substantial breach that went to the heart of the contract. Defects in the title were removed prior to the date selected by the parties to close. Therefore, we hold that plaintiffs are not entitled to rescission of the contract based on their marketable title claim.

Plaintiffs raised other claims of breach of contract that are addressed in the next division. We hold these claims provide no grounds that would entitle plaintiffs to rescission of the contract.

■ II. *Law action for damages.* In a separate division, plaintiffs requested an alternate remedy for damages. They claimed that defendants breached the contract on the closing date by refusing to pay certain expenses that plaintiffs incurred to cure title defects, such as the cost of a survey and related attorney fees, taxes, insurance, and accrued back interest owed S & L. However, following the aborted closing, the parties were able to negotiate all of the disputed expenses except the back interest owed S & L. It is undisputed that plaintiffs were to assume the note and mortgage held by S & L and that they lived on the property for eight months without making monthly payments that included interest. We conclude that defendants were not responsible for the back interest that accrued during this eight-month period.

Under this record plaintiffs have failed to produce substantial evidence showing defendants' breach of contract. We decide as a matter of law that defendants did not breach the contract.

III. *Defendants' counterclaim.* In the counterclaim, defendants seek damages from plaintiffs for breach of contract. Specifically, defendants seek $2,000 in damages caused by the frozen water pipes; $3,500 plaintiffs received from S & L; unpaid contract installments of $559 per month for eight months; and $7,000 that defendants paid S & L to avoid foreclosure. In an affirmative defense, plaintiffs allege that defendants' forfeiture of the contract constituted an election of remedies which precludes a claim for money damages against them. The trial court found that defendants did not meet their burden of proving that plaintiffs' departure caused damages to the house. The trial court awarded defendants a setoff of $3,500 for the amount that S & L paid plaintiffs for a deed to the portions of lots 22 and 24. The court held against defendants on their remaining claims.

■ Defendants' counterclaim is an action at law; thus, our review of the trial court's ruling is for corrections of errors at law. Iowa R.App.P. 4. Findings of fact are binding on the appellate court if supported by substantial evidence. Iowa R.App.P. 14(f)(1). We now turn to defendants' claims.

■ Defendants claim damages for waste which occurred as a result of pipes

that froze after plaintiffs vacated the property. We conclude that defendants' claim for waste fails for three reasons. First, we believe that this claim was not properly before the trial court and consequently, cannot be considered on appeal. Defendants' counterclaim specified a dollar amount for each damage claim and requested a specific amount. However, the counterclaim did not specify or include an amount of damages for their waste claim.

■ Second, if the claim was tried by consent, the trial court found that defendants failed to prove that the damage done to the house was caused by plaintiffs' departure from the property. Even if we could alter this finding of fact in a de novo review, we would rule the same as the trial court. Third, we conclude as a matter of law that since the contract contains an express provision requiring care of the property and defendants knew of the damage to the property prior to forfeiting the contract, the forfeiture of the contract bars defendants from bringing a separate action for waste. *Rudnitski v. Seely*, 452 N.W.2d 664, 667 (Minn.1990).

■ We believe that plaintiffs' affirmative defense is also applicable to defendants' remaining claims. We recently stated:

A seller may elect one of four possible remedies when a purchaser defaults on obligations under a real estate contract:

(1) keep good its tender of performance, demand the balance of the purchase price, and sue for specific performance;

(2) terminate the contract because of the purchaser's breach, keep the land, and sue for damages for the breach;

(3) rescind the contract in toto; or

(4) force a forfeiture.

A seller may not elect to pursue inconsistent remedies by proceeding with an action based on affirmance of the contract, such as a suit for damages, and then use a theory based on disaffirmance of the contract, such as forfeiture.

*McBride v. Hammers*, 418 N.W.2d 60, 63 (Iowa 1988) (citations omitted). When a seller exercises the right of forfeiture against a defaulting purchaser, the contract between the parties has been terminated. *Gray v. Bowers*, 332 N.W.2d 323, 325 (Iowa 1983). Consequently, termination of the contract extinguishes any right to recover the unpaid purchase price or any other claims related to the cancelled contract. *Id.*

■ In this case, defendants' claim for eight monthly payments or for use of the property is essentially a claim for payments on the unpaid purchase price under the contract. The claim for $7,000 is simply a claim for consequential damages arising out of breach of the contract. Defendants' act of forfeiture terminates the contract and precludes recovery of these two expenses.

■ Defendants' remaining claim for reimbursement of the $3,500 that S & L paid plaintiffs to obtain a quitclaim deed presents a more difficult problem. Defendants contend that their forfeiture of the contract precludes plaintiffs' right to receive the $3,500 payment from S & L. Even if plaintiffs had no legitimate property right to convey, we believe that the forfeiture procedure bars defendants' claim for reimbursement of the $3,500. Defendants may have possessed a valid cause of action to obtain title to these partial lots from plaintiffs when plaintiffs defaulted on the contract. Such a right must emanate from the contract and the parties' dealings under it. Defendants elected to forfeit the contract and keep plaintiffs' monthly payments rather than seek a remedy based on the contract. Under our holding in *Gray*, we believe that defendants' forfeiture of the contract precludes any claim that they had against plaintiffs which arose out of the contract, including a claim of the right to any sums that S & L paid plaintiffs.

IV. *Summary.* We hold that plaintiffs were not entitled to rescind the real estate contract or receive damages caused by defendants' alleged breach of the contract. On defendants' counterclaim, we hold that defendants were not entitled to prevail. Consequently, we vacate the decision of the court of appeals. We reverse the judg-

ment of the district court and remand for an order dismissing both the plaintiffs' petition and defendants' counterclaim and to assess costs.

We assess costs on appeal against the appellees.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED AND REMANDED.